## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**DAVID COTTEN, on behalf of himself an all others similarly situated,**

               Plaintiff,

  v.

**BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,**

            Defendant.

Civil Action No. 1:16-cv-12176-MLW

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## <u>ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   RELEVANT FACTS ..........................................................................................2

    A.    The Parties ................................................................................................2

    B.    Plaintiff's ERISA Plan and the Recreational Exclusion ...........................3

    C.    Plaintiff's Claims Regarding Requests for His Daughter's Mental Health
        Treatment ...................................................................................................6

III.  ARGUMENT .......................................................................................................7

    A.    The Governing Legal Standards ................................................................7

        1.    Rule 12(b)(6) ...................................................................................7

        2.    The Parity Act .................................................................................8

    B.    BCBSMA Is Entitled to Dismissal Under Rule 12(b)(6) Because Plaintiff Has
        Not Stated A Claim for Relief Under § 1132(a)(1)(B) ............................10

        1.    The Recreational Exclusion Is In Parity With Medical/Surgical Benefits
            and Limitations ..............................................................................10

        2.    Plaintiff Has Not Alleged, And Cannot Allege, That The Evoke
            Wilderness Program Should Have Been Covered Under The Plan In The
            Absence Of The Recreational Exclusion ......................................13

    C.    Plaintiff's Claim Under § 1132 (a)(3) Fails As Matter of Law.................16

        1.    Plaintiff's Claim For Plan Benefits Under § 1132(a)(3) Should Be
            Dismissed Because That Claim Can Be Pursued, And Is Being Pursued,
            Under § 1132(a)(1)(B) ...................................................................17

        2.    Plaintiff Cannot State A Claim For Breach Of Fiduciary Duty Because
            Plan Design Is Not Fiduciary Conduct ..........................................18

IV.   CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alston v. Town of Brookline, Mass.*,
  No. CV 15-13987-GAO, 2016 WL 5745091 (D. Mass. Sept. 30, 2016) .............................. 7

*Alves v. Harvard Pilgrim Health Care Inc.*,
  204 F. Supp. 2d 198 (D. Mass. June 4, 2002) ................................................................. 19

*Am. Psychiatric Assoc. v. Anthem Health Plans*,
  50 F. Supp. 3d 157 (D. Conn. Sept. 25, 2014) ................................................................. 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................... 7, 8

*Beddall v. State St. Bank & Trust Co.*,
  137 F.3d 12 (1st Cir. 1998) ............................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 7

*Brown v. Sedgwick Claims Mgmt. Servs., Inc.*,
  No. 15-1435 (JAG), 2016 WL 4273193 (D.P.R. Aug. 11, 2016) ...................................... 17

*Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*,
  228 F.3d 24 (1st Cir. 2000) ......................................................................................... 10, 14

*Denius v. Dunlap*,
  330 F.3d 919 (7th Cir. 2003) ............................................................................................. 7

*Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  267 F.3d 30 (1st Cir. 2001) ................................................................................................ 8

*Flanigan v. Gen. Elec. Co.*,
  242 F.3d 78 (2d. Cir. 2001) .............................................................................................. 20

*Foss v. Com.*,
  773 N.E.2d 958 (Mass. 2002) .......................................................................................... 12

*Gallagher v. Cigna Healthcare of Me., Inc.*,
  538 F. Supp. 2d 286 (D. Me. 2008) ................................................................................. 18

*Gent v. CUNA Mut. Ins. Soc'y*,
  611 F.3d 79 (1st Cir. 2010) ................................................................................................ 6

*Gorgone v. The Guardian Life Ins. Co. of Am.*,
  No. C 05-01087 SI, 2006 WL 2038273 (N.D. Cal. July 19, 2006) .............................. 15, 16

*Haley v. City of Boston*,
    657 F.3d 39 (1st Cir. 2011) ............................................................................. 8

*J.T. v. Regence BlueShield*,
    291 F.R.D. 601 (W.D. Wash. 2013) ............................................................... 13

*Joseph F. v. Sinclair Servs. Co.*,
    158 F. Supp. 3d 1239 (D. Utah 2016) ............................................................ 12

*Juarez v. Select Portfolio Servicing, Inc.*,
    708 F.3d 269 (1st Cir. 2013) ......................................................................... 13

*Larocca v. Borden, Inc.*,
    276 F.3d 22 (1st Cir. 2002) ........................................................................... 17

*Lisa O. v. Blue Cross of Idaho Health Serv. Inc.*,
    No. 1:12-CV-00285-EJL, 2015 WL 3439847 (D. Idaho May 28, 2015) ..................................... 15, 16

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) ..................................................................................... 19

*Mauser v. Raytheon Co. Pension Plan for Salaried Emps.*,
    239 F.3d 51 (1st Cir. 2001) ........................................................................... 18

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ....................................................................................... 7

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ..................................................................................... 19

*Sarvis v. Polyvore, Inc.*,
    No. CIV.A. 12-12233-NMG, 2013 WL 4056208 (D. Mass. Aug. 9, 2013) .......................................... 7

*Shaffer v. Foster-Miller, Inc.*,
    650 F. Supp. 2d 124 (D. Mass. 2009) ............................................................ 17

*Turner v. Fallon Cmty. Health Plan, Inc.*,
    127 F.3d 196 (1st Cir. 1997) ......................................................................... 18

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ................................................................................. 17, 18

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) ............................................................................ 6, 8

*Z.D. ex rel. J.D. v. Grp. Health Co-op.*,
    No. C11-1119RSL, 2013 WL 1412388 (W.D. Wash. Apr. 8, 2013) ................................... 13

**STATUTES**

29 U.S.C. § 1002(21)(A) ..................................................................................... 19

29 U.S.C. § 1104(a)(1)..................................................................................................................... 19

29 U.S.C. § 1132 ...................................................................................................................Passim

29 U.S.C. § 1185 ...................................................................................................................Passim

**OTHER AUTHORITIES**

29 C.F.R. § 2590.712 .............................................................................................................Passim

75 Fed.Reg. 5410–01, 5419 (Feb. 2, 2010)................................................................................ 9

78 Fed.Reg. 68240 (Nov. 13, 2013).......................................................................................... 9

Fed. R. Evid. 201(b)..................................................................................................................... 6

Fed. R. Civ P. 12(b)(6).................................................................................................... 3, 7, 8, 10

Local Rule 7.1 ....................................................................................................................... 20, 21

## I.  **INTRODUCTION**

Plaintiff David Cotten ("Plaintiff") seeks benefits that he claims are due under the terms of an employer-sponsored health plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), offered by Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("BCBSMA") and sponsored by his employer, Turbonomic (the "Plan"). Specifically, Plaintiff alleges that BCBSMA improperly withheld benefits for treatment of his daughter's mental health issues at Evoke Therapy, a wilderness program in the mountains and desert of Utah. The Plan specifically excludes coverage for "residential or other care that is *custodial care*," including "services that are performed in educational, vocational, or recreational settings; and 'outward bound-type,' 'wilderness,' 'camp,' or 'ranch' programs" (the "Recreational Exclusion"). *See* Compl., Ex. A at p. 45 (italics in original). The Plan also only covers services rendered by certain types of licensed mental health providers, which Evoke Therapy is not. Plaintiff argues that the Recreational Exclusion violates the federal Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act") because it limits coverage for behavioral health services in a manner that is not in parity with limits on coverage for medical/surgical services. Plaintiff asserts two ERISA claims: (1) "Plan Enforcement" under 29 U.S.C. § 1132(a)(1)(B);[1] and (2) "Breach of Fiduciary Duty" under § 1132(a)(3). Compl., ¶¶ 27-36. Neither one of Plaintiff's claims can survive a motion to dismiss.

*First*, Count 1 of Plaintiff's Complaint should be dismissed because the Recreational Exclusion is in parity with the terms of coverage for medical and surgical ("Medical/Surgical") benefits, which also exclude benefits for educational, vocational, personal comfort, residential,

---

[1] Unless otherwise stated, all ERISA statutory references are to 29 U.S.C. § 1132. Many of the cases upon which BCBSMA relies refer to ERISA's uncodified provisions set forth in Section 502 rather than the United States Code citations.

and custodial care services, as well as for services furnished in a school-based setting or outside of a hospital.  This indisputable fact is apparent from the plain language of the Plan, which Plaintiff attached to his Complaint.  In addition, regardless of the Recreational Exclusion, Plaintiff has not alleged, and cannot allege, that the wilderness program should have otherwise been covered under the Plan.

*Second*, the Court should dismiss Count 2 because a plaintiff cannot assert a claim for benefits or a plan violation under § 1132(a)(3) when the benefits or plan violation can be pursued under another section of ERISA's civil enforcement provisions such as § 1132(a)(1)(B), as is the case here.  Moreover, even if Plaintiff had alleged a breach of fiduciary duty independent from his claim in Count 1, there can be no such claim here because the existence of the Recreational Exclusion is a non-fiduciary act of plan design.

For all of these reasons, and as discussed in more detail below, the Complaint should be dismissed with prejudice.

## II.  RELEVANT FACTS

### A.  The Parties

Plaintiff is a participant in a group health benefit plan sponsored by his employer Turbonomic and insured by BCBSMA.  Compl., ¶ 7.  Plaintiff's minor daughter, A.C., was also covered under the Plan.  *Id.*  Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. is a not-for-profit health maintenance organization (HMO).  *Id.*, ¶ 8.

### B.      Plaintiff's ERISA Plan and the Recreational Exclusion

Plaintiff and A.C. were insured under a BCBSMA Preferred Blue® PPO Preferred Provider Plan.  Compl., Ex. A.  The Subscriber Certificate to the Plan sets forth the terms of Plaintiff's coverage.[2]  *Id.*

The Subscriber Certificate states that benefits are provided for "covered services" that are "medically necessary," and that are not otherwise a limited or excluded benefit.  Compl., ¶ 9; *id.*, Ex. A at pp. 16, 29-63.  The Plan also covers only those behavioral health services that are provided by "a *covered provider* who is a mental health provider," which the Plan defines as follows:

> [A]lcohol and drug treatment facilities; clinical specialists in psychiatric and mental health nursing; community health centers (that are a part of a general hospital); day care centers; detoxification facilities; general hospitals; licensed alcohol and drug counselor I providers; licensed independent clinical social workers; licensed marriage and family therapists; licensed mental health counselors; mental health centers; mental hospitals; opioid treatment program providers for services furnished on or after January 1, 2017; physicians; psychiatric nurse practitioners; psychologists; and other *mental health providers* that are designated for you by *Blue Cross Blue Shield HMO Blue*.

*Id.* at pp.16-17 (italics in original).

The Plan also excludes ***any*** coverage—in either the Medical/Surgical or behavioral health context—for residential, recreational, educational, or other custodial care provided in educational, vocational or recreational settings.  *Id.*, Ex. A at pp. 34, 37, 54, 58, 61-64.  For example, the Plan does not provide benefits for:

- "Club membership fees" and "educational, vocational, or psychosocial counseling" associated with outpatient cardiac rehabilitation (*id.* at p. 34);

---

[2] The Plan document referenced in and attached to the Complaint as an exhibit is central to Plaintiff's claims, such that the Court may appropriately consider that document in evaluating the allegations in the Complaint under Rule 12(b)(6).  *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

- "[M]eals, personal comfort items, and housekeeping services" or custodial care associated with home health care (*id.* at p. 37);

- A "non-hospital-based weight loss program not designated by *Blue Cross Blue Shield HMO Blue*…pre-packaged meals…; and any other items not included as part of a weight loss class or weight loss course" (*id.* at p. 54);

- "[S]ervices to diagnose and treat speech, hearing, and language disorders" when "furnished in a school-based setting" (*id.* at p. 58);

- "[E]xams, evaluations, or services that are performed solely for educational or developmental purposes" (*id.* at p. 62);

- "[E]xams and tests that are required for recreational activities, employment, insurance, and school" (*id.* at p. 62);

- Personal comfort items, such as "items and services that are furnished for your personal care or for your convenience or for the convenience of your family" (*id.* at p. 64)

The Plan also excludes coverage for custodial care across all benefits, which is defined to include the following:

- Care that is given primarily by medically-trained personnel for a member who shows no significant improvement response despite extended or repeated treatment; or

- Care that is given for a condition that is not likely to improve, even if the member receives attention of medically-trained personnel; or

- Care that is given for the maintenance and monitoring of an established treatment program, when no other aspects of treatment require an acute level of care; or

- Care that is given for the purpose of meeting personal needs which could be provided by persons without medical training, such as assistance with mobility, dressing, bathing, eating and preparation of special diets, and taking medications.

Compl., Ex. A at pp. 11 and 61.

4

The Plan also states that "**[n]o benefits** are provided for "[a] service or supply that is not described as a *covered service*."  *Id.* at p. 63.

In its recitation of the mental health and  substance abuse treatment services that are "covered services," the Subscriber Certificate reiterates the exclusion for recreational, residential, and custodial care that are explained elsewhere in the certificate:

> No benefits are provided for psychiatric services for a condition that is not a *mental condition*; residential or other care that is *custodial care*; and services and/or programs that are not *medically necessary* to treat your *mental condition*.  Some examples of services and programs that are not covered by this health plan are: services that are performed in educational, vocational, or recreational settings; and "outward bound-type," "wilderness," "camp," or "ranch" programs.  These types of non-covered programs may be in residential or nonresidential settings.  They may include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities.  These programs may have educational accreditation.  The staff may include some licensed mental health providers who may provide some therapy.  No benefits are provided for any services furnished along with one of these non-covered programs.  For example, no benefits are provided for therapy and/or psychotherapy furnished along with one of these non-covered programs.

*Id.* at p. 45 (italicized terms in original).

The Recreational Exclusion is consistent with Bulletin 2009-11 Access to Intermediate and Outpatient Mental Health and Substance Use Disorder Services, issued by the Massachusetts Commissioner of Insurance and the Massachusetts Commissioner of Mental Health, in which insured health plans were advised that they need **_not_** cover "[t]uition-based programs that offer educational, vocational, recreational or personal development activities, such as a therapeutic school, camp or wilderness program," and "[p]rograms that provide primarily custodial care services."[3]  *See* Request for Judicial Notice ("RJN"), Ex. D at p. 2.

---

[3] Although the Bulletin also states that plans "must provide coverage for medically necessary outpatient or intermediate services provided while the individual is in the program, subject to the terms of the member's evidence of coverage…," Plaintiff has not alleged that any such services

### C.      Plaintiff's Claims Regarding Requests for His Daughter's Mental Health Treatment

Plaintiff alleges that A.C. has a history of "mental health issues such as depression, low self-esteem, suicidal ideation, and drug use." Compl., ¶ 11.  According to the Complaint, A.C. had been seeing a therapist and receiving out-patient treatment for her mental health issues. *Id.* Plaintiff alleges that, on May 24, 2016, A.C.'s therapist concluded that "A.C. was no longer treatable in an out-patient setting, and recommended an intensive, in-patient treatment."[4]  *Id.* The Plan provides coverage for several other types of more intensive behavioral health services including acute residential treatment, partial hospital programs, and intensive outpatient programs.  Compl., Ex. A., p. 45.  Despite the Plan's coverage for these more intensive services and specific exclusion for recreational and custodial care, subsequent to A.C's therapist's recommendation, A.C.'s parents elected to send A.C. to Evoke Therapy in Santa Clara, Utah ("Evoke").  *Id.*

While Plaintiff alleges that Evoke is "a mental health service provider," Evoke is not a licensed mental health facility or other mental health provider.  *See* RJN, Ex. A (Evoke not listed as a mental health facility licensed in Utah); Ex. B (Evoke not listed as a private mental health facility in Utah).  Instead, Evoke is licensed in Utah as an Outdoor Youth Treatment facility.  *Id.*, Ex. C.[5]  Plaintiff has not alleged that treatment at an Outdoor Youth Treatment facility like

---

were provided by a covered mental health provider, such that they would be covered under the terms of the Plan.  *See* RJN, Ex. D; *see also* Footnote 5 below noting that the Court may take judicial of notice of relevant facts on an official government website.

[4] Notably, Plaintiff does not allege that A.C.'s therapist recommended Evoke nor the type of care and programming provided by Evoke.

[5] The Court may take judicial notice of and consider information from Utah's Department of Human Services' Office of Licensing's website without converting this motion into a motion for summary judgment.  The information on that site is central to Plaintiff's claims regarding an exclusion for "wilderness programs," and Plaintiff's reference in the Complaint that Evoke is a "mental health service provider."  *See* Fed. R. Evid. 201(b); *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 (1st Cir. 2010)(taking judicial

Evoke is the type of treatment that A.C.'s outpatient therapist recommended.  *See* Compl., *passim.*

BCBSMA denied Plaintiff's request for coverage of A.C.'s treatment at Evoke on the ground that coverage for "wilderness-related treatment" from a provider like Evoke is not covered under the Plan.  Compl., ¶¶ 12-13.  Plaintiff claims that the denial was improper because the Recreational Exclusion violates the Parity Act, alleging that it "is a separate treatment limitation applicable only to mental health benefits."  *Id.* ¶ 16.  As discussed in greater detail below, BCBSMA's denial was proper, did not violate the Parity Act, and, as a result, Plaintiff's claims should be dismissed.

## III.   ARGUMENT

### A.   The Governing Legal Standards

#### 1.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) is designed to "streamline litigation by dispensing with needless discovery and fact-finding" through the elimination of baseless claims. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  If it appears from the face of the complaint that the plaintiff cannot prove a set of facts that would entitle him to the relief sought,

---

notice of relevant facts on a website that were "not subject to reasonable dispute"); *Sarvis v. Polyvore, Inc.,* No. CIV.A. 12-12233-NMG, 2013 WL 4056208, at *3, n.3 (D. Mass. Aug. 9, 2013) (taking judicial notice of images and screenshots of website ); *Alston v. Town of Brookline, Mass.,* No. CV 15-13987-GAO, 2016 WL 5745091, at *16 n.17 (D. Mass. Sept. 30, 2016) (taking judicial notice of information on town's website); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information from official government website); *see also* Compl., ¶ 11.

the court should dismiss the plaintiff's claims.  *See id*. at 669.  In deciding a Rule 12(b)(6) motion, while the Court must accept Plaintiff's well-pled allegations as true, it need not accept his conclusory allegations or legal conclusions.  *See Iqbal*, 556 U.S. at 678.

Additionally, in analyzing the sufficiency of a complaint, a court properly considers "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).  Matters outside the pleadings may be presented to and considered by the Court in ruling upon a motion to dismiss.  *See Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001) ("documents the authenticity of which are not disputed by the parties," "official public records,"  "documents central to plaintiffs' claim," or "documents sufficiently referred to in the complaint" may be considered in connection with a motion to dismiss without converting such motion into a summary judgment motion); *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).

### 2.    The Parity Act

As early as 1996, the Mental Health Parity Act mandated that group health plans apply the same lifetime and annual dollar limits for mental health benefits as for Medical/Surgical benefits.  In 2008, the Paul Wellstone and Pete Domenici Mental Health and Addition Equity Act extended parity to financial requirements and treatment limitations. *See* 29 U.S.C. § 1185a(a)(3)(A)(i)-(iii).  The Parity Act does not mandate that any specific mental health benefits be provided.  Instead, under the Parity Act, treatment limitations for mental health benefits cannot be "more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan;" and there cannot be "separate treatment limitations that are applicable only with respect to mental health or substance abuse benefits." *Id*., § 1185a(a)(3)(A)(i).

The Parity Act's implementing regulations[6] require parity between mental health benefits and Medical/Surgical benefits that have the same "classification"—i.e., (1) inpatient, in network; (2) inpatient, out of network; (3) outpatient, in network; (4) outpatient, out of network; (5) emergency care; and (6) prescription drugs.    29 C.F.R. § 2590.712(c)(1)(i) and § 2590.712(c)(2)(ii).   They require parity in quantitative and nonquantitative treatment limitations. *Id.*; § 1185a(a)(3)(A)(i)-(iii); 29 C.F.R. § 2590.712(c)(4)(ii).   The regulations explain parity for nonquantitative treatment limitations as follows:

> A group health plan (or health insurance coverage) may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

29 C.F.R. § 2590.712(c)(4)(ii).   Among others, nonquantitative treatment limitations include "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness" and "[r]estrictions based on geographic location, facility type, provider specialty and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id.*, § 2590.712(c)(4)(ii)(A) and (H).

---

[6]  The implementing regulations are set forth in the Final Rules Under the Parity Act, which were promulgated in 2013 to apply to plan years beginning on or after July 1, 2014.  *See* 78 Fed.Reg. 68240 (Nov. 13, 2013); 29 C.F.R. § 2590.712(i).  Prior to the Final Rules, the Interim Final Rules ("IFRs"), which differ from the Final Rules, were in effect as of April 5, 2010 and will apply to plan years beginning on or after prior to July 1, 20104.  *See* IFRs Under the Parity Act, 75 Fed.Reg. 5410–01, 5419 (Feb. 2, 2010).  Because Plaintiff alleges a class period extending back to 2010 (see Compl., ¶¶ 28, 33), depending on the date of the putative class member's plan at issue, both different Rules may apply the IFRs and the Final Rules will apply to the putative class members' claims, depending on the date of the plan at issue.

**B.    BCBSMA Is Entitled to Dismissal Under Rule 12(b)(6) Because Plaintiff Has Not Stated A Claim for Relief Under § 1132(a)(1)(B)**

In Count 1, Plaintiff seeks "Plan Enforcement" under 29 U.S.C. § 1132(a)(1)(B) based on his allegations that "Blue Cross has breached the terms of its health plan through its violation of the Parity Act by its blanket refusal to cover treatment at wilderness therapy." Compl., ¶ 31. This claim fails because (1) the Subscriber Certificate reveals that the exclusion at issue is in parity with Medical/Surgical benefit limitations, and (2) Plaintiff has not alleged, and cannot allege, that, regardless of the Recreational Exclusion, the Evoke wilderness program should have been covered under the Plan.

**1.    The Recreational Exclusion Is In Parity With Medical/Surgical Benefits and Limitations**

Other than the conclusory allegation that the Recreational Exclusion constitutes a violation of the Parity Act, Plaintiff does not allege that the exclusion is a "treatment limitation[] that [is] applicable only with respect to mental health or substance abuse benefits." *See* 29 U.S.C. § 1185a(a)(3)(A)(ii).  Nor could Plaintiff make that allegation in good faith.  The Plan excludes coverage for recreational, educational, other general residential or custodial care to treat both behavioral health and Medical/Surgical conditions.[7]  Although the reference to "wilderness" "camp" or "ranch" programs appears in the section describing the covered services for Mental Health and Substance Abuse Treatments, it is included as just one example in a paragraph that also describes recreational, educational, general residential or custodial care that is excluded elsewhere in the Subscriber Certificate for Medical/Surgical services.  *See, e.g.,* Compl, Ex. A at pp. 34, 37, 54, 58, 61-64.

---

[7] Plaintiff alleges that "there is no corresponding limitation for treatment for physical injury." Compl., ¶ 1.  But that allegation directly contradicts the terms of the Plan, which control here, because the Subscriber Certificate contains corresponding limitations for Med/Surg benefits. *Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (when documents attached to a complaint contradict its allegations, the document controls).

The Parity Act does not require a plan to use the exact same terminology in describing benefit limitations for both mental health and Medical/Surgical conditions.  In other words, the Plan does not violate the Parity Act simply because the terms "wilderness" "camp" and "ranch" are not included in the description of the types of Medical/Surgical services that are excluded from coverage.[8]  Rather, the Parity Act requires health plans to cover the same categories and types of services and treatment—i.e., inpatient, intermediate, and outpatient care—for both mental health and Medical/Surgical benefits.  *See* 29 C.F.R. § 2590.712(c)(1)(i) and § 2590.712(c)(2)(ii)(requiring parity in mental health and Medical/Surgical benefits of the same "classification").[9]  This is especially true, here, where the Subscriber Certificate provides benefits for inpatient hospital treatment, intermediate treatment (such as acute residential treatment, partial hospitalization programs, and intensive outpatient programs), and outpatient services for mental health conditions.  *See* Compl., Ex. A at pp. 45-46.

In short, the Plan treats recreational, educational, or other general residential or custodial care services the same, whether they are provided to treat a mental health condition or a Medical/Surgical condition.  Because the Plan does not provide benefits for ***any*** recreational,

---

[8] It is not surprising that wilderness programs are not specifically referenced in the description of excluded Medical/Surgical services in that such programs are generally used to treat behavioral health issues rather than medical/surgical issues.  For that same reason, that is why "club membership fees" and "medical or exercise equipment" are provided as examples of services that are excluded in the section of the Subscriber Certificate describing the services that are covered for Cardiac Rehabilitation and are not provided as an example of excluded services in the section on Mental Health and Substance Abuse Treatment.

[9] As illustrated in Example 9 in the Parity Act implementing regulations, a Parity Act violation would exist if a plan automatically excludes coverage for inpatient substance use disorder treatment outside of a hospital (such as at a residential treatment center), but covers inpatient treatment outside of a hospital for other conditions (such as Medical/Surgical conditions) if the provider obtains authorization that the treatment is medically appropriate.  29 C.F.R. § 2590.712(c)(4)(iii) (*see* Example 9).  In that example, "the plan's unconditional exclusion of substance use disorder treatment in any setting outside of a hospital is not comparable to the conditional exclusion of inpatient treatment outside of a hospital for other conditions."  *Id.*

educational, non-acute residential or custodial care services, the exclusion at issue is "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." *See* 29 U.S.C. § 1185a(a)(3)(A); *see also* 29 C.F.R. § 2590.712(c)(2)(ii) (only requiring parity in the same "classification" of benefits).

Moreover, the Massachusetts Commissioner of Insurance and the Massachusetts Commissioner of Mental Health have instructed that wilderness programs like Evoke are "[t]uition-based programs that offer educational, vocational, recreational or personal development activities" that the Massachusetts mental health parity act does not require a health plan to cover.[10] *See* RJN, Ex. D.

The legal authority Plaintiff cites in his Complaint does not save his claim. *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239 (D. Utah 2016), is inapposite. *Joseph F.* did not involve an exclusion similar to the Recreational Exclusion. Rather, in *Joseph F.*, the plan excluded coverage for acute residential treatment for mental health conditions, which the parties agreed was a nonquantitative treatment limitation, so the court focused on whether the limitation was permissible. *Id.* at 1245, 1261. *Joseph F.* is distinguishable on this point because Plaintiff's Plan expressly provides benefits for acute residential treatment. *See* Compl., Ex. A at p. 45. Additionally, in *Joseph F.*, the court found that the acute residential treatment exclusion violated the Parity Act because the ERISA plan at issue previously covered residential treatment, which was "available only for mental health conditions," so "[w]hen the Plus Plan eliminated coverage for residential treatment services, it necessarily imposed a treatment limitation that applies only with respect to mental health conditions." 158 F. Supp. 3d at 1262. Quite the opposite is true here. The Plan covers a variety of levels of care for mental health treatment.

---

[10] *See Foss v. Com.*, 773 N.E.2d 958, 960 (Mass. 2002) ("We accord due weight and deference to an agency's interpretation of statutes within its charge.").

Compl., Ex. A at p. 45.

Because the Plan does not cover recreational, non-acute residential and custodial care for both mental health and Medical/Surgical conditions, Plaintiff cannot allege that BCBSMA violated the Parity Act.  His claim under 29 U.S.C. § 1132(a)(1)(B) to recover benefits must be dismissed as a result.  *See Z.D. ex rel. J.D. v. Grp. Health Co-op.*, No. C11-1119RSL, 2013 WL 1412388, at *2-3 (W.D. Wash. Apr. 8, 2013) (finding that a plan's "sixty-visit cap on neurodevelopmental therapies to treat mental health disorders is allowed under the Act because [the plan] applies the exact same cap on coverage to those therapies when used to treat physical health conditions"); *see also J.T. v. Regence BlueShield*, 291 F.R.D. 601, 605, 614 (W.D. Wash. 2013) (following *Z.D. ex rel. J.D. v. Grp. Health Co-op*. to deny the plaintiff's motion for partial summary judgment, finding no violation of the Washington Mental Health Parity Act because plan benefits for neurodevelopmental therapy and rehabilitation were both capped at $1,500 per year).

### 2.  Plaintiff Has Not Alleged, And Cannot Allege, That The Evoke Wilderness Program Should Have Been Covered Under The Plan In The Absence Of The Recreational Exclusion

The Court should also dismiss Count 1 because Plaintiff has not alleged any facts from which the Court can infer that, regardless of the Recreational Exclusion, A.C.'s treatment at Evoke should have been covered under the Plan.  *See Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013)("[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief.").  Plaintiff alleges only that A.C.'s parents, which would include Plaintiff, "chose" treatment at Evoke.  Compl., ¶ 11.  He has not alleged that any treating provider recommended care at a facility or program like Evoke.  Although Plaintiff alleges that A.C.'s therapist recommended an "intensive, in-patient treatment" (*id.*), he has not alleged any

facts demonstrating that Evoke is an "intensive, in-patient treatment" program, or that Evoke qualifies as any other type of mental health provider for which the Plan affords coverage. *See* Compl., ¶¶ 9-10; *see also* Compl., Ex. A at pp. 16-17 (defining "mental health provider" as used in the Subscriber Certificate).

Nor has Plaintiff alleged that Evoke provided a "covered service" to A.C.  *See id.*, Ex. A at p. 10-11 (noting that BCBSMA will provide coverage for covered services that are "furnished by *covered providers*")(italics in original).  There are no allegations in the Complaint indicating that Evoke provides services that would qualify as inpatient or intermediate treatments covered under the Plan, specifically, inpatient hospital care, acute residential treatment, partial hospital programs, and intensive outpatient programs.  *See id.* at p. 45.

Moreover, contrary to Plaintiff's conclusory allegation that Evoke is a "mental health provider," information subject to judicial notice establishes that Evoke is an Outdoor Youth Treatment program, providing educational, spiritual, and self-help type treatment that is akin to recreational, personal development, and custodial care, and **not** a mental health provider.  The fact that Evoke is not licensed as a mental health provider or treatment facility in Utah undermines any claim that it treats mental health conditions and provides services that would be covered under the terms of the Plan.  *See* RJN Exs. A – B (Utah's Department of Human Services' Office of Licensing's lists of licensed mental health facilities and substance abuse facilities, which do not identify Evoke).  Utah's Department of Human Services' Office of Licensing's records trump Plaintiff's conclusory allegations that Evoke is a mental health provider.  *See Clorox Co. P.R.*, 228 F.3d at 32.  As a result, Evoke does not meet, and could not plausibly meet, the definition of "Mental Health Providers" in the Subscriber Certificate, which requires Evoke to be licensed:

These covered providers include any one or more of the following kinds of health

care providers: alcohol and drug treatment facilities; clinical specialists in psychiatric and mental health nursing; community health centers (that are a part of a general hospital); day care centers; detoxification facilities; general hospitals; licensed alcohol and drug counselor I providers; licensed independent clinical social workers; licensed marriage and family therapists; *licensed* mental health counselors; mental health centers; mental hospitals; opioid treatment program providers for services furnished on or after January 1, 2017; physicians; psychiatric nurse practitioners; psychologists; and other mental health providers that are designated for you Blue Cross Blue Shield HMO Blue.

*See* Compl., Ex. A at pp. 16-17 (emphasis added).

Even if patients at Evoke receive occasional therapy from mental health professionals, courts have found that a program that provides therapy as a secondary service constitutes non-coverable recreational, residential or custodial care, as is the case here with Evoke.  *See Gorgone v. The Guardian Life Ins. Co. of Am.*¸ No. C 05-01087 SI, 2006 WL 2038273, *6 (N.D. Cal. July 19, 2006) (treatment at a ranch boarding school and residential treatment center, where therapy provided by licensed professionals was a secondary service, amounted to custodial care).  *Lisa O. v. Blue Cross of Idaho Health Serv. Inc.*, No. 1:12-CV-00285-EJL, 2015 WL 3439847, *11 (D. Idaho May 28, 2015) (boarding school where educational and behavioral modification therapy is provided was not mental health treatment even when students met with psychiatrists).[11]

For example, in *Gorgone* the court found that an ERISA administrator did not abuse its discretion in applying a provision excluding primarily custodial care, education, or training, for the following reasons: (1) psychiatric sessions were conducted off-site monthly; (2) a licensed therapist counseled weekly, "with unlicensed counselors providing supplemental treatment;" (3)

---

[11] This is also consistent with the Recreational Exclusion, which provides that "[t]hese types of non-covered programs… may include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities….[and] may include some licensed mental health providers who may provide some therapy."  Compl., Ex. A. p. 45. Moreover, this limitation is in parity with those applicable to Med/Surg services, as custodial care includes certain care even if rendered by medically-trained personnel (*id.* at p. 11), and the Plan does not cover a service "furnished along with non-covered service" for services to treat a mental condition and Med/Surg condition (*id.* at p. 63).

the "treatment team did not include a physician or registered nurse;" (4) "the medicine administration records were substandard;" and (5) "lay personnel administered the medicine." 2006 WL 2038273 at *6.   The court concluded that the ranch boarding school "provided custodial care…because the therapy provided by licensed professionals was a secondary service," where the "primary function was to provide school-based programming while caring for Julia in the absence of her parents."  *Id.*

Similarly, in *Lisa O.*, the court found that a plan administrator properly denied coverage for services that "included regular treatment therapy sessions, education courses, activities, recreation, and tracking of [the patient's] overall well-being."  2015 WL 3439847 at *11.  The court agreed that the treatment was to correct behavior, rather than address a mental disorder, and that it was reasonable to apply an exclusion for "services consisting mainly of …, behavioral modification, self-care or self-help training."  *Id.*

But, here, Plaintiff has not even alleged that A.C. received treatment from a provider other than Evoke, or a covered mental health provider—i.e., "*licensed* alcohol and drug counselor I providers; *licensed* independent clinical social workers; *licensed* marriage and family therapists; *licensed* mental health counselors."  *See* Compl., Ex. A, at pp. 16-17 (emphasis added).   Accordingly, Plaintiff has not alleged, nor can he allege, that the services Evoke provided to A.C. would be covered by the Plan in the absence of the Recreational Exclusion.

## C.    Plaintiff's Claim Under § 1132 (a)(3) Fails As Matter of Law

In Count 2, Plaintiff claims that BCBSMA's "blanket denial of wilderness therapy" under the Plan constitutes a breach of fiduciary duty under 29 U.S.C. §1132(a)(3).  *See* Compl., ¶¶ 34-36 and p. 10 at ¶¶ c-d.  This claim fails because (1) Plaintiff cannot assert a claim for benefits or violation of the Plan under § 1132(a)(3) when the benefits or Plan violation can be pursued under § 1132(a)(1)(B), as Plaintiff has done here, and (2) even if Plaintiff had alleged a breach of

fiduciary duty independent from his claim under the Plan in Count 1, there can be no such claim here because the existence of the Recreational Exception is a non-fiduciary act of plan design.

>    **1.    Plaintiff's Claim For Plan Benefits Under § 1132(a)(3) Should Be Dismissed Because That Claim Can Be Pursued, And Is Being Pursued, Under § 1132(a)(1)(B)**

While § 1132(a)(1)(B) permits a participant or beneficiary "to recover benefits due to him under the terms of his Plan...," § 1132(a)(3) provides that "a participant, beneficiary, or fiduciary" may sue "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the Plan."  The Supreme Court, however, has held that the equitable remedies of § 1132(a)(3) are only available when no other subsection of § 1132(a) can adequately remedy an alleged plan violation.  *Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996).

The Supreme Court describes § 1132(a)(3) as "a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] *does not elsewhere adequately remedy*."  *Id.* at 512 (emphasis added).  As a result, "[f]ederal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)."  *Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002).  Thus, courts in the First Circuit routinely dismiss § 1132(a)(3) claims for benefits or plan violations when a plaintiff can pursue the same claim under § 1132(a)(1)(B).  *Shaffer v. Foster-Miller, Inc.*, 650 F. Supp. 2d 124, 127 (D. Mass. 2009) ("the First Circuit has consistently held that the availability of adequate relief under section 1132(a)(1)(B) to recover benefits due under the terms of a plan bars a separate claim for breach of fiduciary duty under section 1132(a)(3) as a matter of law"); *Brown v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 15-1435 (JAG), 2016 WL 4273193, at *5 (D.P.R. Aug. 11, 2016)

17

(dismissing §502(a)(3) breach of fiduciary duty claim because plaintiff had adequately plead a claim to recover benefits under § 1132(a)(1)(B), "has other means to recover, and adding another duplicative remedy would be improper") (citing *Mauser v. Raytheon Co. Pension Plan for Salaried Emps.*, 239 F.3d 51, 58 (1st Cir. 2001) (noting that courts "should avoid creating duplicative remedies for violations of ERISA's provisions"); *Turner v. Fallon Cmty. Health Plan, Inc*., 127 F.3d 196, 200 (1st Cir. 1997) (holding that beneficiary denied benefits could not sue under Section a(3) since the claim was "specifically addressed by [Section a(1) ]"); *Gallagher v. Cigna Healthcare of Me., Inc.*, 538 F. Supp. 2d 286, 297 (D. Me. 2008) (dismissing a § 1132(a)(3) breach of fiduciary duty claim that sought injunctive and other equitable relief because relief was available under §1132(a)(1)(B)).

Here, Plaintiff bases his breach of fiduciary duty claim on the same conduct on which his Plan violation claim under § 1132(a)(1)(B) rests (i.e., that BCBSMA wrongfully denied benefits by way of the Recreational Exclusion, which Plaintiff claims violates the Parity Act). Compl., ¶¶ 31-36. Plaintiff's "breach of fiduciary duty" claim (Count 2) simply reiterates and relabels the claim set forth in Count 1 and requests remedies for BCBSMA's alleged breach of its fiduciary duty. That is not permissible under ERISA'S carefully-crafted enforcement scheme. *See Varity*, 516 U.S. at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.' ").

### 2.   Plaintiff Cannot State A Claim For Breach Of Fiduciary Duty Because Plan Design Is Not Fiduciary Conduct

Plaintiff likewise fails to state a claim under § 1132(a)(3) because a health benefit plan like BCBSMA does not act as a fiduciary under ERISA when it designs the terms and conditions of a health benefit plan. Under ERISA, an entity acts as a fiduciary only if it "exercises any

discretionary authority or discretionary control respecting management of [the] plan," or "has any discretionary authority or discretionary responsibility in [its] administration."  29 U.S.C. § 1002(21)(A).  The ERISA statute describes the duties of a plan fiduciary as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
>    (i) providing benefits to participants and their beneficiaries ...
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ...
> [and]
> (D) in accordance with the documents and instruments governing the plan
> ....

29 U.S.C. § 1104(a)(1).

Plaintiff's claim is not premised on BCBSMA's exercise of discretionary authority or control in connection with management of the Plan.  Instead, he alleges a flaw in the design of the Plan in that it does not provide for equal coverage of wilderness programs.  As the Supreme Court has confirmed, "an employer's decisions about the content of a plan are not themselves fiduciary acts."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)).  ERISA does not "mandate what kind of benefit employers must provide if they choose to have such a plan." *Lockheed*, 517 U.S. at 887.  Plaintiff's claim relating to the existence and legality of the Recreational Exclusion in his Plan does not constitute a fiduciary act subject to an ERISA claim under § 1132(a)(3).  *See Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 209-210 (D. Mass. June 4, 2002) (explaining that decisions about the contents of a plan are not fiduciary acts and finding no breach of fiduciary duty based on ERISA plan sponsors' decision to charge a flat copayment for prescription drugs).  Indeed, Plaintiff cites to an authority in his Complaint, which involved an alleged violation of the Parity Act, and which confirms that "the setting of… policies regarding coverage," is a "business

decision" and that "general fiduciary duties under ERISA [are] not triggered" by [a] "corporate business decision." *Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157 (D. Conn. Sept. 25, 2014) (quoting *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d. Cir. 2001).

## IV.    CONCLUSION

For all of the reasons set forth above, Defendant respectfully requests that the Court grant its Motion to Dismiss of Plaintiff's Complaint with prejudice for failure to state a claim upon which relief may be granted.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendant respectfully requests oral argument on its Motion to Dismiss Plaintiff's Complaint.

Dated:  January 13, 2017                                    Respectfully submitted,

BLUE CROSS AND BLUE SHIELD OF
MASSACHUSETTS HMO BLUE, INC.

By: /s/ Alexandra S. Tuffuor

Charles L. Solomont (BBO# 557190)
Alexandra S. Tuffuor (BBO# 692864)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, Massachusetts 02110
Telephone: (617) 341-7700
Fax: (617) 341-7701
carl.solomont@morganlewis.com
alexandra.tuffuor@morganlewis.com

Joseph J. Costello (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Fax: (215) 963-5001
joseph.costello@morganlewis.com

Molly Moriarty Lane (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Fax: (415) 442-1001
molly.moriarty@morganlewis.com

Lisa Veasman (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA  90071-3132
Telephone: (213) 612-2500
Fax: (213) 612-2501
lisa.veasman@morganlewis.com

## LOCAL RULE 7.1(A)(2) CERTIFICATE

Pursuant to Local Rule 7.1(a)(2), I, Alexandra S. Tuffuor, an attorney with Morgan, Lewis & Bockius LLP and counsel for Defendant, hereby certify that counsel Defendant, communicated with Plaintiff, in a good faith effort to resolve or narrow the issues set forth in the foregoing motion and report that no resolution on these matters was reached.

/s/ Alexandra S. Tuffuor

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2017, a true copy of the forgoing document was served on the following counsel of record via the Court's CM/ECF system:

Patrick J. Sheehan
WHATLEY KALLAP, LLP
60 State Street, 7th Floor
Boston, MA 02109
Telephone: 617-573-5118
Fax: 617-371-2950
Email: psheehan@whatleykallas.com

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: 954-616-8995
Facsimile: 954-206-0374
Email: jordan@jml-lawfirm.com

By: /s/ Alexandra S. Tuffuor