# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DAVID COTTEN, JAMES ROBINSON, and CAROLYN CAIN, individually and on behalf of all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC. and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.,**<br><br>Defendants. | Civil Action No. 1:16-cv-12176-MLW |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## <u>THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    RELEVANT FACTS ......................................................................................... 2

    A.    The Parties ............................................................................................ 2

    B.    Coverage Under Plaintiffs' Subscriber Certificate and Benefit
          Descriptions ......................................................................................... 3

    C.    Plaintiffs' Requests for Their Children's Alleged Mental Health and/or
          Substance Abuse Treatment.................................................................. 5

III.    ARGUMENT ..................................................................................................... 6

    A.    The Governing Legal Standards ........................................................... 6

    B.    Count 1 Should Be Dismissed Because Plaintiffs Have Not Stated a Claim
          Under § 1132(a)(1)(B), As They Have Not Alleged, and Cannot Allege,
          That the Wilderness Programs Should Have Been Covered Under Their
          Plans..................................................................................................... 7

          1.    The Recreational Exclusion Expressly Excludes Coverage for
                Services Rendered by Wilderness Programs ............................... 8

          2.    Plaintiffs Have Not Alleged that the Wilderness Programs
                Otherwise Provided Covered Services and Qualify as Covered
                Providers .................................................................................... 8

          3.    Plaintiffs Do Not Allege That They Received Prior Approval for
                the Inpatient Room and Board Services at the Wilderness
                Programs for Which They Seek Benefits................................... 14

    C.    Count 3 for Breach of Fiduciary Duty Under § 1132 (a)(3) Fails As Matter
          of Law ................................................................................................ 15

          1.    Plaintiffs' Claim for Plan Benefits Under § 1132(a)(3) Should Be
                Dismissed Because That Claim Can Be Pursued, and Is Being
                Pursued, Under § 1132(a)(1)(B) ............................................. 15

          2.    Plaintiffs Cannot State a Claim for Breach of Fiduciary Duty
                Because Plan Design Is Not Fiduciary Conduct ....................... 17

          3.    Plaintiffs Also Fail to State a Breach of Fiduciary Duty Because
                BCBSMA Denied Plaintiffs' Requests According to Plan Terms.......... 19

IV.    CONCLUSION................................................................................................. 20

REQUEST FOR ORAL ARGUMENT ..................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Town of Brookline, Mass.*,
No. CV 15-13987-GAO, 2016 WL 5745091 (D. Mass. Sept. 30, 2016) ................................6

*Alves v. Harvard Pilgrim Health Care Inc.*,
204 F. Supp. 2d 198 (D. Mass. June 4, 2002)...................................................................18, 19

*Am. Psychiatric Assoc. v. Anthem Health Plans*,
50 F. Supp. 3d 157 (D. Conn. Sept. 25, 2014)..................................................................18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................7

*Beddall v. State St. Bank & Trust Co.*,
137 F.3d 12 (1st Cir. 1998)............................................................................................3, 6, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................7

*Brown v. Sedgwick Claims Mgmt. Servs., Inc.*,
No. 15-1435 (JAG), 2016 WL 4273193 (D.P.R. Aug. 11, 2016)...........................................16

*Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*,
228 F.3d 24 (1st Cir. 2000)...................................................................................................10

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) ..................................................................................................6

*Edes v. Verizon Communications Inc.*,
417 F.3d 133 (1st Cir. 2005)...................................................................................................6

*Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
267 F.3d 30 (1st Cir. 2001).....................................................................................................7

*Gallagher v. Cigna Healthcare of Me., Inc.*,
538 F. Supp. 2d 286 (D. Me. 2008) ......................................................................................17

*Gent v. CUNA Mut. Ins. Soc'y*,
611 F.3d 79 (1st Cir. 2010).....................................................................................................6

*Gorgone v. The Guardian Life Ins. Co. of Am.*,
No. C 05-01087 SI, 2006 WL 2038273 (N.D. Cal. July 19, 2006) .......................................13

*Haley v. City of Boston*,
    657 F.3d 39 (1st Cir. 2011) ................................................................................7

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    571 U.S. 99 (2013) ..........................................................................................19

*Juarez v. Select Portfolio Servicing, Inc.*,
    708 F.3d 269 (1st Cir. 2013) ............................................................................7

*Larocca v. Borden, Inc.*,
    276 F.3d 22 (1st Cir. 2002) ............................................................................16

*Lisa O. v. Blue Cross of Idaho Health Serv. Inc.*,
    No. 1:12-CV-00285-EJL, 2015 WL 3439847 (D. Idaho May 28, 2015) .........................13, 14

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) ........................................................................................18

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ..........................................................................................6

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ........................................................................................18

*Perry v. New England Business Service, Inc.*,
    347 F.3d 343 (1st Cir. 2003) ............................................................................6

*Roy C. v. Aetna Life Ins. Co.*,
    2:17-CV-1216, 2018 WL 4511972 (D. Utah Sept. 20, 2018) ...........................8, 12

*Ruiz v. Bally Total Fitness Holding Corp.*,
    447 F. Supp. 2d 23 (D. Mass. 2006), aff'd, 496 F.3d 1 (1st Cir. 2007) ...................................19

*Sarvis v. Polyvore, Inc.*,
    No. CIV.A. 12-12233-NMG, 2013 WL 4056208 (D. Mass. Aug. 9, 2013) ............................6

*Shaffer v. Foster-Miller, Inc.*,
    650 F. Supp. 2d 124 (D. Mass. 2009) ..................................................................16

*Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*,
    852 F.3d 105 (1st Cir. 2017) ............................................................................20

*Turner v. Fallon Cmty. Health Plan, Inc.*,
    127 F.3d 196 (1st Cir. 1997) ............................................................................16

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ....................................................................................16, 17

*Watterson v. Page*,
  987 F.2d 1 (1st Cir. 1993) ........................................................................... 6, 7

*Welp v. Cigna Health & Life Ins. Co.*,
  CASE NO. 17-80237-CIV-MIDDLEBROOKS, 2017 WL 3263138 (S.D. Fla.
  July 20, 2017) .................................................................................................... 12

**Statutes, Rules, and Regulations**

29 U.S.C. § 1002(21)(A) ................................................................................. 17

29 U.S.C. § 1022(a) ........................................................................................ 20

29 U.S.C. § 1104(a)(1) ............................................................................... 18, 19

29 U.S.C. § 1132 ................................................................................... *passim*

Employee Retirement Income Security Act of 1974 ("ERISA") ......................... *passim*

Federal Mental Health Parity and Addiction Equity Act ............................... 6, 15, 17, 18

Fed. R. Civ. Proc. 12(b)(6) ........................................................................ 3, 6, 7

Fed. R. Evid. 201(b) ......................................................................................... 6

Utah Admin. Code R432-101 ............................................................................ 10

Utah Admin. Code R432-151-2 ........................................................................ 10

Utah Admin. Code R432-151-3(a) ................................................................... 10

Utah Admin. Code R501-8 ............................................................................... 10

Utah Admin. Code R501-19 ............................................................................. 10

Utah Code Ann. § 62A-2-101(36) .................................................................... 10

Vt. Admin. Code 12-4-201:I, § 1.1 ................................................................... 11

Vt. Admin. Code 12-4-201:II ........................................................................... 11

I.     **INTRODUCTION**

In their Second Amended Class Action Complaint ("SAC"), Plaintiffs David Cotten, James Robinson, and Carolyn Cain ("Plaintiffs") seek benefits that they claim are due under the terms of their employer-sponsored health plans (the "Plans") governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which are administered and/or offered by Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("BCBSMA HMO") or Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA PPO," and collectively "BCBSMA" or "Defendants").  Plaintiffs allege that BCBSMA improperly withheld benefits for treatment of their children's mental health and/or substance abuse issues at wilderness programs in the mountains and desert of Utah, Vermont, and Maine (the "Wilderness Programs").  Their Plans, however, **_specifically exclude_** coverage for "residential or other care that is _custodial care_," including "services that are performed in educational, vocational, or recreational settings; and 'outward bound-type,' 'wilderness,' 'camp,' or 'ranch' programs" (the "Recreational Exclusion").  _See_ SAC ¶¶ 27, 40, 54 and Ex. A at p. 45, Ex. B at p. 41, and Ex. C at 41 (italics in original).  The Plans also only cover services rendered by certain types of licensed mental health providers, which the Wilderness Programs are not.

Plaintiffs assert two ERISA claims: (1) "Plan Enforcement" under 29 U.S.C. § 1132(a)(1)(B)[1]—Counts 1 and 2; and (2) "Breach of Fiduciary Duty" under § 1132(a)(3)—Count 3.  SAC ¶¶ 133-148.  For the following reasons, Count 1 and Count 3 must be dismissed.

_First_, Count 1 should be dismissed because the services for which Plaintiffs seek benefits

---

[1] Unless otherwise stated, all ERISA statutory references are to 29 U.S.C. § 1132.  Many of the cases upon which BCBSMA relies refer to ERISA's uncodified provisions set forth in Section 502 rather than the United States Code citations.

are expressly excluded under their Plans by way of the Recreational Exclusion and the provision that provides coverage only for services rendered by covered mental health providers, which the Wilderness Programs are not. Plaintiffs, thus, have not alleged, and cannot allege, that the Wilderness Programs their children attended should have been covered under their Plans.

*Second*, the Court should dismiss Count 3 because Plaintiffs cannot assert a claim for benefits or a plan violation under § 1132(a)(3) when the benefits or an alleged plan violation can be pursued under another section of ERISA's civil enforcement provisions such as § 1132(a)(1)(B), as is the case here. Moreover, even if Plaintiffs had alleged a breach of fiduciary duty independent from their claims in Counts 1 and 2, the existence of the Recreational Exclusion is a non-fiduciary act of plan design, and Plaintiffs have not alleged that BCBSMA improperly applied the Plan terms in their denials.

As discussed in more detail below, the Counts 1 and 3 should be dismissed with prejudice.

## II.   RELEVANT FACTS

### A.   The Parties

Plaintiffs were participants in a group health benefit plan sponsored by their employers and insured and/or administered by BCBSMA at the time of the services in dispute. SAC ¶¶ 8, 11-12, 14-15. Plaintiff Cotten's ERISA Plan was a fully insured plan, and Plaintiffs Robinson's and Cain's Plans were self-insured plans. *Id.*, ¶¶ 8, 12, 15. Plaintiffs' minor children also were covered under their parents' respective Plans. *Id.*, ¶¶ 17, 31, 45.

BCBSMA HMO is a not-for-profit health maintenance organization, and is "authorized to arrange for the coordinated delivery of health care services to its subscribers." *Id.*, ¶ 9. BCBSMA HMO administered Plaintiff Cotten's ERISA Plan. *Id.*, ¶ 8. BCBSMA PPO administered Plaintiffs Robinson's and Cain's self-insured employer-sponsored plans. *Id.*, ¶¶ 12, 15.

**B.      Coverage Under Plaintiffs' Subscriber Certificate and Benefit Descriptions**

The terms of Plaintiffs' coverage are set forth in a Subscriber Certificate (for Plaintiff Cotten and his daughter, A.C.) and Benefit Descriptions (for Plaintiff Robinson and his son, J.R., and Plaintiff Cain and her son, C.K.).  SAC, Exs. A-C.[2]  Those documents state that benefits are provided for "covered services" that are "medically necessary," and that are not otherwise a limited or excluded benefit.  SAC ¶ 60; *id.*, Ex. A at pp. 10-11, 16, 29-63, Ex. B at pp. 9, 13, 26-51, Ex. C at pp. 9, 13, 26-57.  Plaintiffs' Subscriber Certificate and Benefit Descriptions also provide that behavioral health services are covered only if they are provided by "a *covered provider* who is a *mental health provider*," which is defined as follows:

> [A]lcohol and drug treatment facilities; clinical specialists in psychiatric and mental health nursing; community health centers (that are a part of a general hospital); day care centers; detoxification facilities; general hospitals; licensed alcohol and drug counselor I providers; licensed independent clinical social workers; licensed marriage and family therapists; licensed mental health counselors; mental health centers; mental hospitals; opioid treatment program providers[]; physicians; psychiatric nurse practitioners; psychologists; and other *mental health providers* that are designated for you by *Blue Cross Blue Shield* [*HMO Blue*].

*Id.*, Ex. A at pp. 16-17, Ex. B at p. 14, Ex. C at p. 14 (italics in original).  The Subscriber Certificate and Benefit Descriptions also state that "**[n]o benefits** are provided for "[a] service or supply that is not described as a *covered service*[,]" and that "[n]o benefits are provided for any services and supplies that are furnished by the kinds of health care providers that are not covered by this health plan."  *Id.*, Ex. A at p. 63, Ex. B at p. 54, Ex. C. at p. 60.

In describing covered mental health and substance abuse treatment, Plaintiffs' Subscriber Certificate and Benefit Descriptions provide that "Covered Services" include, among other levels

---

[2] The Plan documents referenced in and attached to the SAC as exhibits are central to Plaintiffs' claims, so the Court may consider them in evaluating the allegations in the SAC under Rule 12(b)(6).  *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

of care, "Intermediate Treatments," such as "Acute residential treatment." SAC, Ex. A at p. 45, Ex. B at p. 41, Ex. C at p. 42. Notably, an acute mental health residential treatment center is distinct from a facility providing general non-acute residential care that is more akin to generic residential, custodial, or recreational care. *See, e.g., id.*, Ex. A at pp. 16-17, Ex. B at p. 14, Ex. C at p. 14 (describing inpatient mental health services as including "semiprivate room and board and special services" provided with "psychiatric care that is furnished … by a physician (who is a specialist in psychiatry), or by a psychologist, or by a clinical specialist in psychiatric and mental health nursing, or by another mental health provider"). "Acute residential treatment" for mental health conditions is an "inpatient benefit" (*id.*, Ex. A at p. 45, Ex. B at p. 41, Ex. C at p. 41-42), which refers to benefits when an individual is admitted as a registered bed patient in a hospital or health care facility (*id.*, Ex. A at p. 14, Ex. B at p. 11, Ex. C at p. 12).

In reciting the mental health and substance abuse treatment services that are "covered services," the Subscriber Certificate and Benefit Descriptions reiterate the exclusion for general non-acute recreational, residential, and custodial care:

> **No benefits** are provided for psychiatric services for a condition that is not a *mental condition*; residential or other care that is *custodial care*; and services and/or programs that are not *medically necessary* to treat your *mental condition*. Some examples of services and programs that are not covered by this health plan are: services that are performed in educational, vocational, or recreational settings; and "outward bound-type," "wilderness," "camp," or "ranch" programs. These types of non-covered programs may be in residential or nonresidential settings. They may include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities. These programs may have educational accreditation. The staff may include some licensed mental health providers who may provide some therapy. No benefits are provided for any services furnished along with one of these non-covered programs. For example, no benefits are provided for therapy and/or psychotherapy furnished along with one of these non-covered programs.

*Id.*, ¶ 64 and Ex. A at p. 45, Ex. B at p. 41, Ex. C. at p. 41 (emphasis in original).

### C.     Plaintiffs' Requests for Their Children's Alleged Mental Health and/or Substance Abuse Treatment

Plaintiffs allege that each of their children have mental health and/or substance abuse issues.  SAC ¶¶ 17, 31, 45.  They allege that their children had been receiving other forms of outpatient and/or inpatient mental health and substance abuse treatment, but that those treatments were not successful.  *Id.*  As a result, Plaintiffs determined that the programs "best suited" to treat their children's conditions were the Wilderness Programs, so they enrolled A.C. in Evoke at Entrada ("Evoke") in the desert and mountains of Utah (*id.*, ¶ 17), J.R. at Confluence Behavioral Health ("Confluence") in the mountains of Vermont (*id.*, ¶ 31), and C.K. at Summit Achievement of Stow ("Summit") in the mountains of Maine (*id.*, ¶ 45).  Plaintiffs selected these Wilderness Programs despite the fact that their Plans cover several other types of more intensive behavioral health services including acute residential treatment and room and board associated with that inpatient level of care.  *Id.*, Ex. A., p. 45, Ex. B at pp. 41-42, Ex. C at pp. 41-42.

While Plaintiffs allege that Evoke is an "intermediate care program," Confluence is a "short-term residential treatment program," and Summit is a "residential treatment program," they are not mental health facilities licensed to provide acute residential treatment, which is the coverage Plaintiffs seek.  Instead, Evoke is licensed as an "Outdoor Youth Treatment" program, Confluence is licensed as "Therapeutic Community Residence," and Summit was licensed as a "Child Residential Facility," and currently is licensed to provide only "Outpatient Therapy" and "Community Support Services."  SAC ¶¶ 18, 32, 46; *see* Request for Judicial Notice ("RJN"), Ex. A (Evoke not listed as a mental health facility or substance abuse facility licensed in Utah); RJN Ex. B (same); RJN Ex. C-D; *cf.* RJN Ex. E (sample Maine licensing report for program licensed as a residential program for mental health).[3]

---

[3] The Court may take judicial notice of and consider information from Utah, Vermont, and Maine's

BCBSMA denied Plaintiffs' requests for coverage of their children's treatment at Evoke, Confluence, and Summit on the ground that coverage for "wilderness-related treatment" from those programs is not covered under the Plan. SAC ¶¶ 26-28, 40, 42, 54, 56, and Exs. D-F; *see also* Exhibits 1-3 attached hereto.[4] Plaintiffs allege that the denial was improper because the Wilderness Programs purportedly qualify as "intermediate" programs under the Subscriber Certificate and Benefit Descriptions and because the Recreational Exclusion allegedly violates the Federal Mental Health Parity and Addiction Equity Act ("Parity Act"). *Id.*, ¶¶ 1, 3-4, 70-72. As discussed in greater detail below, BCBSMA's denial was proper, BCBSMA did not breach any fiduciary duties, and Counts 1 and 3 should, therefore, be dismissed.

## III.    ARGUMENT

### A.    The Governing Legal Standards

Federal Rule of Civil Procedure 12(b)(6) is designed to "streamline litigation by dispensing with needless discovery and fact-finding" through the elimination of baseless claims. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the

---

state licensing websites without converting this motion into a motion for summary judgment. The information on those sites is central to Plaintiffs' claims regarding an exclusion for "wilderness programs," and Plaintiffs' contention that the Wilderness Programs their children attended are covered providers under their Plans. *See* Fed. R. Evid. 201(b); *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 (1st Cir. 2010) (taking judicial notice of relevant facts on a website that were "not subject to reasonable dispute"); *Sarvis v. Polyvore, Inc.*, No. CIV.A. 12-12233-NMG, 2013 WL 4056208, at *3, n.3 (D. Mass. Aug. 9, 2013) (taking judicial notice of images and screenshots of website); *Alston v. Town of Brookline, Mass.,* No. CV 15-13987-GAO, 2016 WL 5745091, at *16 n.17 (D. Mass. Sept. 30, 2016) (taking judicial notice of information on town's website); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information from official government website).

[4] The Court may consider denial letters and other materials relevant to a claim denial when considering motions to dismiss. *See Edes v. Verizon Communications Inc.*, 417 F.3d 133, 137, n.4 (1st Cir. 2005); *Perry v. New England Business Service, Inc.*, 347 F.3d 343, 345, n.2 (1st Cir. 2003). The Court may also properly consider the denial letters sent to Plaintiffs because they are referenced in the SAC and central to Plaintiffs' claims. *Beddall*, 137 F.3d at 17.

point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations and internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  If it appears from the face of the complaint that the plaintiff cannot prove a set of facts that would entitle him to the relief sought, the court should dismiss the plaintiff's claims.  *See id*. at 669.  In deciding a Rule 12(b)(6) motion, while the Court must accept Plaintiff's well-pled allegations as true, it need not accept his conclusory allegations or legal conclusions.  *See Iqbal*, 556 U.S. at 678.

Additionally, in analyzing the sufficiency of a complaint, a court may consider "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011); *see Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001) ("documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim," or "documents sufficiently referred to in the complaint" may be considered in connection with a motion to dismiss without converting such motion into a summary judgment motion); *Watterson*, 987 F.2d at 3-4.

### B.      Count 1 Should Be Dismissed Because Plaintiffs Have Not Stated a Claim Under § 1132(a)(1)(B), As They Have Not Alleged, and Cannot Allege, That the Wilderness Programs Should Have Been Covered Under Their Plans

In Count 1, Plaintiffs seek "Plan Enforcement" under 29 U.S.C. § 1132(a)(1)(B) based on allegations that BCBSMA "wrongfully den[ies]" alleged "medically necessary mental health treatment in outdoor/wilderness behavioral healthcare programs" applying the purportedly "across-the-board improper" Recreational Exclusion.  SAC ¶ 135.  This claim fails because Plaintiffs have not alleged any facts from which the Court can infer that the services their children received at the Wilderness Programs should have been covered under their Plans.  *See Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013) ("[F]actual allegations" must be

separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief."). Indeed, the Subscriber Certificate, Benefit Descriptions, and documents subject to judicial notice demonstrate that those services are *not* covered.

### 1. The Recreational Exclusion Expressly Excludes Coverage for Services Rendered by Wilderness Programs

Although Plaintiffs' Plans cover intermediate treatment for behavioral health issues at acute residential treatment facilities, Plaintiffs allege that they determined that the programs "best suited" for their children were the Wilderness Programs. SAC ¶¶ 17, 31, 45. But the services provided at Evoke, Confluence, and Summit fall squarely within the Recreational Exclusion. Plaintiffs' own allegations confirm that the treatment received at those programs was "outdoor/wilderness behavioral therapy." *Id.*, ¶¶ 1, 3, 19, 34, 48. The plain language of the Recreational Exclusion, however, does not provide benefits for services rendered by such "wilderness" or "outward bound-type" programs. *Id.*, Ex. A at p. 45, Ex. B at p. 41, Ex. C. at p. 41. BCBSMA's decision to deny coverage for attending those Wilderness Programs, therefore, is proper under the terms of Plaintiffs' Plans. *See Roy C. v. Aetna Life Ins. Co.*, 2:17-CV-1216, 2018 WL 4511972, at *5 (D. Utah Sept. 20, 2018) ("the Plan at issue in this case expressly and clearly excludes from coverage '[t]reatment in wilderness programs or similar programs' …, and therefore, Plaintiffs' claim for benefits for treatment at Open Sky Wilderness Therapy is expressly and clearly excluded from coverage.").

### 2. Plaintiffs Have Not Alleged that the Wilderness Programs Otherwise Provided Covered Services and Qualify as Covered Providers

Plaintiffs' § 1132(a)(1)(B) claim also fails because they have not alleged any facts demonstrating that the Wilderness Programs are the type of covered mental health provider rendering "covered services" for which the Plans afford coverage—i.e., "Intermediate Treatment,"

specifically acute residential treatment.  SAC, Ex. A at pp. 16-17, 45, Ex. B at pp. 14, 41, Ex. C at

pp. 14, 41-42 (defining "mental health providers" and describing covered mental health treatment).

**a.      Judicially Noticeable Matters Show That the Wilderness Programs Are Not Covered Mental Health Providers**

Contrary to Plaintiffs' conclusory allegations, matters subject to judicial notice reveal that

the Wilderness Programs in which Plaintiffs' children were enrolled are **not** licensed mental health

acute residential treatment programs or other programs providing room and board services that are

otherwise covered under their Plans:

- Evoke is licensed as an "Outdoor Youth Treatment" program, providing educational, spiritual, and self-help type treatment that is akin to recreational, personal development, and custodial care (*see* SAC ¶ 18; RJN, Ex. B);

- Confluence is licensed in Vermont as a "Therapeutic Community Residence" (SAC ¶ 32; RJN Ex. C); and

- Summit was licensed in Maine as a "Child Residential Facility," which as of September 2018 only had a license for "Community Support Services" and "Outpatient Therapy" (SAC ¶ 46; *see also* RJN Ex. D).

None of these programs is a mental health acute residential treatment facility that provides

mental health or substance abuse treatment that is "more intensive than typical *outpatient care*[,]"

and "is considered to be an *inpatient* benefit," such that semiprivate room and board and special

services are covered.  *See* SAC, Ex. A at p. 45, Ex. B at p. 41, Ex. C at pp. 41-42 (describing

inpatient mental health services as including "semiprivate room and board and special services"

provided with "psychiatric care that is furnished … by a physician (who is a specialist in

psychiatry), or by a psychologist, or by a clinical specialist in psychiatric and mental health

nursing, or by another mental health provider" and explaining that "acute residential treatment"

for mental health conditions may be appropriate when an individual does "not need 24-hour

inpatient hospital care"); *see also* RJN Exs. A-E.  The fact that the Wilderness Programs are not

9

licensed mental health treatment facilities in their respective states undermines Plaintiffs' allegations that they treat mental health conditions and provide services that would be covered under the terms of Plaintiffs' Plans.[5]

Plaintiffs' allegations regarding Utah, Vermont, and Maine's licensing requirements cannot overcome the fact that the Wilderness Programs are not licensed for acute residential treatment for mental health or substance abuse. As for Evoke, Plaintiffs compare Utah's licensing requirements for "Outdoor Youth Treatment" (licensed pursuant to Utah Admin. Code R501-8) to the licensing requirements for "Residential Treatment" (licensed pursuant to Utah Admin. Code R501-19). *See* SAC ¶¶ 92-99. That comparison, however, is to "Residential Treatment" that may or may not be licensed to provide mental health or substance abuse treatment, just like an "Outdoor Youth Treatment" program. For example, "Residential Treatment" programs licensed under Utah Admin. Code R501-19 also include programs providing treatment for behavior modification, discipline, and emotional growth. *See* Utah Code Ann. § 62A-2-101(36). An entirely different state department in Utah, however, licenses "Mental Disease Facilities," which focus on providing psychiatric care and treating mental health conditions.[6] *See id.*, Utah Admin. Code R432-151-3(a) and R432-151-2. Residential Treatment programs licensed as "Human Services Programs" under Utah Admin. Code R501-19, therefore, are not the most comparable programs for what would qualify as mental health "Intermediate Treatment" under Plaintiffs' Plans. More importantly, however, regardless of whether a program meets both the requirements of "Outdoor Youth

---

[5] States' licensing records trump Plaintiffs' contradictory allegations that Evoke, Confluence, and Summit are covered mental health providers. *Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (when documents attached to a complaint contradict its allegations, the document controls).

[6] Utah's Department of Health, Family Health and Preparedness, Licensing also licenses psychiatric hospitals. *See* Utah Admin. Code R432-101.

Treatment" or "Residential Treatment," it is not a covered mental health provider if it is not licensed as a mental health or substance abuse program as well, and Evoke is not. *See* RJN Exs. A and B.

Vermont's "Therapeutic Community Residences," like Confluence, fare no better. "Generally, therapeutic community residences are used by people who are experiencing problems in coping with such difficulties as substance abuse, psychiatric disabilities, traumatic brain injuries, cognitive and developmental disabilities, family dysfunctions and delinquency." Vt. Admin. Code 12-4-201:I, § 1.1; *see also* Vt. Admin. Code 12-4-201:II (nn). Being a licensed "Therapeutic Community Residence" in Vermont, therefore, does not necessarily qualify Confluence as a covered mental health provider, authorized to provide "acute residential treatment."

Plaintiffs' allegations that a "Child Residential Facility," like Summit, is required to develop an individual service plan and have a Clinical Consultant overseeing treatment likewise fail to plead that Summit is an acute residential treatment program. *See* SAC ¶¶ 107-109. This is particularly the case given that, as of September 2018, Summit only had a license for "Community Support Services" and "Outpatient Therapy" (*see* RJN Ex. D), but not for residential treatment rising to the level of covered inpatient benefits.

        **b.**      **Plaintiffs' Allegations Regarding Staffing and General Therapy Services Received Do Not Transform the Wilderness Programs into Covered Mental Health Providers**

While Plaintiffs allege that the lead therapist at Evoke is a Ph.D. level psychologist (SAC ¶ 21), "Confluence's Clinical Director is a Ph.D. level psychologist, who leads a team of Ph.D. and master's level therapists" (*id.*, ¶ 33), and that Summit's "Medical Director is a doctor of osteopathic medicine…, who leads a team of masters-level therapists" (*id.*, ¶ 47), they have not alleged that their children received services from those specific providers, let alone any services that qualify as acute residential treatment. Importantly, the Subscriber Certificate and Benefit

Descriptions state that "Intermediate Treatments" for mental health or substance abuse issues, such as acute residential treatment, is more intensive treatment than typical outpatient care—i.e., basic individual or group therapy.  *Id.*, Ex. A at p. 45, Ex. B at p. 41, Ex. C at pp. 41-42.

Plaintiffs' allegations that their children received an initial psychiatric assessment or evaluation and a treatment plan, and their allegations regarding group and individual therapy their children received, also fall short.  *See id.*, ¶¶ 20, 34-36, 49-50.  Plaintiffs have not alleged how frequent the group and individual therapy sessions were, so as to qualify as "acute residential treatment" warranting coverage for inpatient services, including room and board, for which Plaintiffs seek benefits for six weeks (A.C., *see* SAC ¶ 22), two months (J.R., *see* SAC ¶ 37), and more than three months (C.K., *see* SAC ¶ 51).  None of these allegations establish that the Wilderness Programs provide services that would qualify as inpatient or intermediate treatments covered under Plaintiffs' Plans.

As a result, Evoke, Confluence, or Summit do not and cannot meet the definition of "Mental Health Providers" in the Subscriber Certificate and Benefit Descriptions, which include a "covered provider who is a ***mental health provider***."  *Id.*, Ex. A at pp. 16-17, Ex. B at p. 14, Ex. C at p. 14 (emphasis added); *see also Welp v. Cigna Health & Life Ins. Co.*, CASE NO. 17-80237-CIV-MIDDLEBROOKS, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017) (finding that a Utah wilderness program was not a covered psychiatric residential treatment facility); *Roy C.*, 2018 WL 4511972 at *3, 5 (same and rejecting Plaintiffs' argument that the program is licensed in Colorado as a residential treatment center because the Plan definition of residential treatment center expressly excludes wilderness programs).

Even if patients at the Wilderness Programs receive occasional therapy from mental health professionals, as Plaintiffs allege, courts have found that a program that provides therapy as a

secondary service constitutes non-coverable recreational, residential or custodial care, as is the case here with Evoke, Confluence, and Summit.  *See Gorgone v. The Guardian Life Ins. Co. of Am.¸* No. C 05-01087 SI, 2006 WL 2038273, *6 (N.D. Cal. July 19, 2006) (treatment at a ranch boarding school and residential treatment center, where therapy provided by licensed professionals was a secondary service, amounted to custodial care); *Lisa O. v. Blue Cross of Idaho Health Serv. Inc.*, No. 1:12-CV-00285-EJL, 2015 WL 3439847, *11 (D. Idaho May 28, 2015) (boarding school where educational and behavioral modification therapy is provided was not mental health treatment even when students met with psychiatrists).[7]

In *Gorgone* the court found that an ERISA administrator did not abuse its discretion in applying a provision excluding primarily custodial care, education, or training to a ranch boarding school, for the following reasons: (1) psychiatric sessions were conducted off-site monthly; (2) a licensed therapist counseled weekly, "with unlicensed counselors providing supplemental treatment;" (3) the "treatment team did not include a physician or registered nurse;" (4) "the medicine administration records were substandard;" and (5) "lay personnel administered the medicine."  2006 WL 2038273 at *6.  The court concluded that the program "provided custodial care…because the therapy provided by licensed professionals was a secondary service," where the "primary function was to provide school-based programming while caring for [plaintiff's daughter] in the absence of her parents."  *Id.*

Similarly, in *Lisa O.*, the court found that a plan administrator properly denied coverage for services that "included regular treatment therapy sessions, education courses, activities,

---

[7] This is also consistent with the Recreational Exclusion, which provides that "[t]hese types of non-covered programs… may include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities….[and] may include some licensed mental health providers who may provide some therapy."  SAC, Ex. A. p. 45, Ex. B at p. 41, Ex. C at pp. 41-42.

recreation, and tracking of [the patient's] overall well-being."  2015 WL 3439847 at *11.  The court agreed that the treatment was to correct behavior, rather than address a mental disorder, and that it was reasonable to apply an exclusion for "services consisting mainly of …, behavioral modification, self-care or self-help training."  *Id.*

Here, Plaintiffs have not alleged the type or quantity of mental health services that A.C., J.R., or C.K., may have received at their Wilderness Programs.  They do not even seek coverage for such services.  The invoices and claims forms for services identifies only room and board (*see* Ex. 5 attached hereto), which are only covered if the services are inpatient (*see* SAC, Ex. A at p. 19, Ex. B at p. 15, Ex. C at p. 16), an "Enrollment Fee and Prepaid days" (*see* Ex. 4 attached hereto), and an "Enrollment/Gear Fee" and "Achievement Program" (*see* Ex. 6 attached hereto),[8] which are not covered services.  Accordingly, Plaintiffs have not alleged, nor can they allege, that the services the Wilderness Programs provided, and for which benefits were requested, should have been covered by the Plan in the absence of the Recreational Exclusion.

> **3.  Plaintiffs Do Not Allege That They Received Prior Approval for the Inpatient Room and Board Services at the Wilderness Programs for Which They Seek Benefits**

Additionally, as indicated in the Plaintiffs' Subscriber Certificate or Benefit Description, coverage for acute residential treatment for mental health and/or substance abuse conditions, including the associated room and board, requires "approval before …enter[ing] a hospital or other covered facility."  SAC, Ex. A at p. 45, Ex. B at p. 41, Ex. C at pp. 41-42; *see also id.*, Ex. A at p. 19, Ex. B at p. 15, Ex. C at p. 16 (noting that "[f]or an approved *inpatient* admission, *covered services* include *room and board.*") (emphasis in original); *see also* Exhibits 4-6 attached hereto

---

[8] The Court may also properly consider the invoices and/or claim forms for the very services Plaintiffs seek coverage in this case because they are referenced in the SAC and central to Plaintiffs' claims.  *Beddall*, 137 F.3d at 17.  A true and accurate copy of the invoices and/or claim forms are attached hereto as Exhibits 4-6.

(invoices and claim form for room and board, enrollment fees, gear, and prepaid days).  Plaintiffs have not alleged that they received approval for any inpatient admission, and the documents attached to the SAC indicate that their request for admission to the Wilderness Programs was not approved.  *See* SAC at Exs. D-F.  As to Plaintiffs Cotten and Robinson in particular, Plaintiffs' allegations and the facts established in documents attached to the SAC or incorporated by reference confirm that prior approval was not requested before A.C. and J.R. enrolled at Evoke and Confluence.  *See* SAC ¶¶ 22 and 37 (noting that A.C. enrolled on May 16, 2016, and J.R. enrolled on February 13, 2017) and SAC Ex. F and Exhibit 1 attached hereto (reflecting that authorization for the services A.C. received was requested on May 25, 2016, and for J.R. on March 13, 2017).  For this reason as well, BCBSMA properly denied coverage for any room and board at the Wilderness Programs, and Plaintiffs cannot demonstrate that the benefits they seek should have been covered under their Plans.

### C.    Count 3 for Breach of Fiduciary Duty Under § 1132 (a)(3) Fails As Matter of Law

In Count 3, Plaintiffs allege that BCBSMA breached fiduciary duties owed to plan participants and beneficiaries because they purportedly have not complied with the terms of the Parity Act, and "allegedly failed to act in accordance with the documents and instruments governing plaintiffs' health benefit plans."  *See* SAC ¶¶ 141-146.  This claim fails for at least three reasons.

#### 1.    Plaintiffs' Claim for Plan Benefits Under § 1132(a)(3) Should Be Dismissed Because That Claim Can Be Pursued, and Is Being Pursued, Under § 1132(a)(1)(B)

While § 1132(a)(1)(B) permits a participant or beneficiary "to recover benefits due to him under the terms of his Plan...," § 1132(a)(3) provides that "a participant, beneficiary, or fiduciary" may sue "(A) to enjoin any act or practice which violates any provision of this subchapter or the

terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the Plan." The Supreme Court, however, has held that the equitable remedies of § 1132(a)(3) are only available when no other subsection of § 1132(a) can adequately remedy an alleged plan violation. *Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996).

The Supreme Court describes § 1132(a)(3) as "a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] *does not elsewhere adequately remedy*." *Id.* at 512 (emphasis added). As a result, "[f]ederal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)." *Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002). Thus, courts in the First Circuit routinely dismiss § 1132(a)(3) claims for benefits or plan violations when a plaintiff can pursue the same claim under § 1132(a)(1)(B). *Shaffer v. Foster-Miller, Inc.*, 650 F. Supp. 2d 124, 127 (D. Mass. 2009) ("the First Circuit has consistently held that the availability of adequate relief under section 1132(a)(1)(B) to recover benefits due under the terms of a plan bars a separate claim for breach of fiduciary duty under section 1132(a)(3) as a matter of law"); *Brown v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 15-1435 (JAG), 2016 WL 4273193, at *5 (D.P.R. Aug. 11, 2016) (dismissing §502(a)(3) breach of fiduciary duty claim because plaintiff had adequately plead a claim to recover benefits under § 1132(a)(1)(B), "has other means to recover, and adding another duplicative remedy would be improper") (citing *Mauser v. Raytheon Co. Pension Plan for Salaried Emps.*, 239 F.3d 51, 58 (1st Cir. 2001) (noting that courts "should avoid creating duplicative remedies for violations of ERISA's provisions"); *Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir. 1997) (holding that beneficiary denied benefits could not sue under Section a(3) since the claim was

16

"specifically addressed by [Section a(1) ]"); *Gallagher v. Cigna Healthcare of Me., Inc.*, 538 F. Supp. 2d 286, 297 (D. Me. 2008) (dismissing a § 1132(a)(3) breach of fiduciary duty claim that sought injunctive and other equitable relief because relief was available under §1132(a)(1)(B)).

Here, Plaintiffs base their breach of fiduciary duty claim on the same conduct on which their Plan violation claims under § 1132(a)(1)(B) rest (i.e., that BCBSMA wrongfully denied benefits by way of the Recreational Exclusion, which Plaintiffs claim violates the Parity Act). SAC ¶¶ 141-148.   Plaintiffs' "breach of fiduciary duty" claim (Count 3) simply reiterates and relabels the claims for benefits set forth in Count 1 and Count 2 and requests remedies for BCBSMA's alleged breach of its fiduciary duty.   That is not permissible under ERISA'S carefully-crafted enforcement scheme.   *See Varity*, 516 U.S. at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.' ").

### 2.   Plaintiffs Cannot State a Claim for Breach of Fiduciary Duty Because Plan Design Is Not Fiduciary Conduct

Plaintiffs likewise fail to state a claim under § 1132(a)(3) because a health benefit plan or claims administrator like BCBSMA does not act as a fiduciary under ERISA as it relates to design of the terms and conditions of an employer-sponsored health benefit plan.   Under ERISA, an entity acts as a fiduciary only if it "exercises any discretionary authority or discretionary control respecting management of [the] plan," or "has any discretionary authority or discretionary responsibility in [its] administration." 29 U.S.C. § 1002(21)(A).   The ERISA statute describes the duties of a plan fiduciary as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries ...
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with

17

> such matters would use in the conduct of an enterprise of a like character
> and with like aims ...
> [and]
> (D) in accordance with the documents and instruments governing the plan
> ....

29 U.S.C. § 1104(a)(1).[9]

Plaintiffs do not premise Count 3, as it relates to the Recreational Exclusion allegedly violating the Parity Act, on any exercise of discretionary authority or control in connection with management or administration of the Plans.  Instead, they allege a flaw in the design of the Plans in that they supposedly do not provide for equal coverage of wilderness programs.  As the Supreme Court has confirmed, "an employer's decisions about the content of a plan are not themselves fiduciary acts." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)).  ERISA does not "mandate what kind of benefit employers must provide if they choose to have such a plan." *Lockheed*, 517 U.S. at 887.  Plaintiffs' allegations relating to the existence and legality of the Recreational Exclusion in their Plans do not constitute a fiduciary act subject to an ERISA claim under § 1132(a)(3).  *See Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 209-210 (D. Mass. June 4, 2002) (explaining that decisions about the contents of a plan are not fiduciary acts and finding no breach of fiduciary duty based on ERISA plan sponsors' decision to charge a flat copayment for prescription drugs).  Indeed, in another case involving an alleged violation of the Parity Act, the court confirmed that "the setting of… policies regarding coverage," is a "business decision" and that "general fiduciary duties under ERISA [are] not triggered" by [a] "corporate business decision." *Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157 (D. Conn. Sept. 25, 2014) (quoting *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d. Cir. 2001).

---

[9] 29 U.S.C. § 1104 is the codified version of Section 404 of ERISA.

### 3.    Plaintiffs Also Fail to State a Breach of Fiduciary Duty Because BCBSMA Denied Plaintiffs' Requests According to Plan Terms

Plaintiffs also purport to assert that BCBSMA breached fiduciary duties owed under § 1104(a)(1) "by failing to act in accordance with the documents and instruments governing plaintiffs' health benefits plans."  SAC ¶ 146.  Section 1104(a)(1) imposes a "[p]rudent man standard of care," charging fiduciaries with, among other things, acting: (1) "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries;" and (2) "in accordance with the documents and instruments governing the plan… ."  *Id.*  The plan document, therefore, is "at the center of ERISA" and is the "linchpin" of ERISA fiduciary obligations.  *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013).  In this circuit, "there can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms."  *Alves*, 204 F. Supp. 2d at 210.

Here, any breach of fiduciary duty claim must be dismissed because the Subscriber Certificate and Benefit Descriptions are clear about what services are covered and when benefits may be denied.  *See Ruiz v. Bally Total Fitness Holding Corp.*, 447 F. Supp. 2d 23, 28 (D. Mass. 2006), aff'd, 496 F.3d 1 (1st Cir. 2007) ("Interpretation of an unambiguous contract is a matter of law and may, therefore, be done at the motion to dismiss stage.").  They cover treatment of certain psychiatric illnesses, and cover "[a]cute residential treatment," but clarify that benefits are not available for general non-acute residential, recreational, custodial, or services that are not medically necessary, which may include those provided in "educational, vocational, or recreational setting," including a "wilderness," "outward bound-type," "camp," or "ranch" programs.  SAC, Ex. A at p. 45, Ex. B at p. 41, Ex. C. at p. 41.  This term is clear and "sufficiently accurate and comprehensive" to allow the average participant to understand that coverage will not be provided for general non-acute "residential" care, which includes "services that are performed in

educational…or recreational settings," like the Wilderness Programs. *See id; see also* 29 U.S.C. § 1022(a). Indeed, in analyzing this very provision, the First Circuit has described it as "pellucid." *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 113 (1st Cir. 2017). Accordingly, Plaintiffs have not alleged that BCBSMA breached any fiduciary duty in applying the "pellucid" Recreational Exclusion to Plaintiffs' requests for benefits for the alleged mental health treatment received at the Wilderness Programs.

## IV.   <u>CONCLUSION</u>

For all of the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Dismiss Counts 1 and 3 of Plaintiffs' SAC with prejudice for failure to state a claim upon which relief may be granted.

<u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1(d), Defendants respectfully request oral argument on their Motion to Dismiss Plaintiffs Second Amended Class Action Complaint.

Dated:  October 22, 2018

Respectfully submitted,

BLUE CROSS AND BLUE SHIELD OF
MASSACHUSETTS HMO BLUE, INC. AND
BLUE CROSS AND BLUE SHIELD OF
MASSACHUSETTS, INC

By: /s/ *Lisa Veasman*

Charles L. Solomont (BBO# 557190)
Peter J. Mee (BBO# 677081)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, Massachusetts 02110
Telephone: (617) 341-7700
Fax: (617) 341-7701
carl.solomont@morganlewis.com
peter.mee@morganlewis.com

Joseph J. Costello (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Fax: (215) 963-5001
joseph.costello@morganlewis.com

Molly Moriarty Lane (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Fax: (415) 442-1001
molly.moriarty@morganlewis.com

Lisa Veasman (Admitted *Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA  90071-3132
Telephone: (213) 612-2500
Fax: (213) 612-2501
lisa.veasman@morganlewis.com

## LOCAL RULE 7.1(A)(2) CERTIFICATE

Pursuant to Local Rule 7.1(a)(2), I, Lisa Veasman, an attorney with Morgan, Lewis & Bockius LLP and counsel for Defendants, hereby certify that counsel Defendant, communicated with counsel for Plaintiffs, in a good faith effort to resolve or narrow the issues set forth in the foregoing motion and report that no resolution on these matters was reached.

/s/ *Lisa Veasman*

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2018, a true copy of the forgoing document was served

on the following counsel of record via the Court's CM/ECF system:

Patrick J. Sheehan
WHATLEY KALLAS, LLP
60 State Street, 7th Floor
Boston, MA 02109
Telephone: 617-573-5118
Fax: 617-371-2950
Email: psheehan@whatleykallas.com

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: 954-616-8995
Facsimile: 954-206-0374
Email: jordan@jml-lawfirm.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue NE
Atlanta, GA 30306
Telephone: (404) 607-8222
dwinegard@whatleykallas.com

By: /s/ Lisa Veasman

DB2/ 35105421

22