# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DAVID COTTEN, JAMES ROBINSON and CAROLYN CAIN,** individually and on behalf of himself and all others similarly situated, | |
| **Plaintiffs,** | **CASE NO: 1:16-CV-12176-MLW** |
| **V.** | |
| **BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC., AND BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.,** | |
| **Defendants.** | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................1

III.  LEGAL STANDARD .............................................................................5

IV.   ARGUMENT .........................................................................................5

    A. Plaintiffs have stated *prima facie* claims for plan enforcement under 29 U.S.C. § 132(a)(1)(B) – *Count 1* .......................................................5

        1.   Plaintiffs have pled the proper elements ..................................6

        2.   Rules of construction .................................................................6

        3.   Standard of review .....................................................................7

        4.   BCBS <u>covers</u> wilderness therapy ..............................................7

            a.  Covered services .................................................................7

            b. Medical necessity ................................................................8

            c.  Covered providers ..............................................................8

            d.  Pre-approval .......................................................................9

        5.   There is no applicable exclusion for wilderness therapy ...................9

        6.   BCBS waived its other coverage defenses ...........................................12

    B.   Plaintiffs have stated a *prima facie* claim for breach of fiduciary duty under 29 U.S.C. § 132(a)(3) – *Count 3* ....................................................*15*

        1.   Plaintiffs have pled the proper elements ..................................15

        2.   Section 1132(a)(3) claims may be pled in the alternative ..................16

        3.   Violation of the ERISA statute is not protected "plan design" ........18

        4.   BCBS's "plan term's" argument misses the point ..............................19

V.    CONCLUSION .....................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**

*A.Z. v. Regence Blue Shield,*
   2018 U.S. Dist. LEXIS 134669 (W.D. Wash. August 9, 2018) ............................. 4

*Adomaitis v. Alcoa, Inc.,*
   2007 U.S. Dist. LEXIS 18574 (W.D. Pa. March 15, 2007) ..................................... 7

*Alves v. Harvard Pilgrim Health Care, Inc.,*
   204 F Supp.2d 198 (D. Mass. 2002) .................................................................... 19

*American Psychiatric Assoc. v. Anthem Health Plans,*
   50 F. Supp.3d 157 (D. Conn. 2014) ................................................................ 18, 19

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ...................................... 5

*Bard v. Boston Shipping Ass'n,*
   471 F.3d 229 (1st Cir. 2006) ................................................................................ 12

*Bushell v. Unitedhealth Group,*
   2018 U.S. Dist. LEXIS 51577 (S.D.N.Y. March 27, 2018) ................................... 5

*Caffey v. UNUM Life Ins., Co.,*
   302 F.3d 576 (6th Cir. 2002) .................................................................................. 7

*Camelot Care Centers v. Planters Lifesavers Co.,*
   836 F. Supp. 545 (N.D. Ill. 1993) ........................................................................ 11

*CIGNA Corp. v. Amara,*
   516 U.S. 489, 131 S. Ct. 1866, 179 L.Ed.2d 843 (2011) ............................... *passim*

*Degnan v. Publicker Indus., Inc.,*
   83 F.3d 27, 30 (1st Cir. 1996) ................................................................................ 6

*Dowdy v. Metropolitan Life. Ins. Co.,*
   890 F.3d 802 (9th Cir. 2018) .................................................................................. 7

*Erickson v. Aetna Life Ins. Co.,*
   777 F. Supp. 1463 (D. Minn. 1991) ..................................................................... 11

*Esden v. Bank of Bos.,*
    229 F.3d 154 (2nd Cir. 2000) ......................................................... 18

*Gallagher v. Empire HealthChoice Assurance, Inc.*
    2018 U.S. Dist. LEXIS 154756 (S.D.N.Y. Sept. 11, 2018) ....................................... 4

*Gastronomical Workers Union Local 610 v. Dorado Beach Hotel Corp.,*
    617 F.3d 54 (1st Cir. 2010) ............................................................ 18

*George v. Reliance Standard Life Ins. Co.,*
    776 F.3d 349 (5th Cir. 2015) ........................................................... 12

*Glista v. UNUM Life Ins. Co.,*
    378 F.3d 113 (1st Cir. 2004) ........................................................ 12, 13

*Harlick v. Blue Shield of Cal.,*
    686 F.3d 699 (9th Cir. 2012) ........................................................... 12

*Hayner v. Weinberger,*
    382 F. Supp. 762 (E.D.N.Y. 1974) ...................................................... 11

*Hughes v. Boston Mut. Life Ins. Co.,*
    26 F.3d 264 (1st Cir. 1994) ............................................................. 6

*Hughes Aircraft Co. v. Jacobson,*
    525 U.S. 432, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999) .................................... 18

*Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete,*
    484 U.S. 539, 108 S. Ct. 830, 98 L.Ed.2d 936 (1988) ...................................... 18

*Laurenzano v. Blue Cross & Blue Shield,*
    134 F. Supp. 2d 180 (D. Mass. 2001) ................................................... 19

*Moyle v. Liberty Mut. Ret. Benefit Plan,*
    2016 U.S. App. LEXIS 15202 (9th Cir. Aug. 18, 2016) ..................................... 17

*O'Connor v. Central Virginia U.F.C.W.,*
    945 F.2d 799 (4th Cir. 1991) ........................................................... 11

*Powell v. AT&T Comm., Inc.,*
    938 F.2d 823 (7th Cir. 1991) ........................................................... 13

*Risteen v. Youth for Understanding, Inc.,*
    2003 U.S. Dist. LEXIS 16726 (D.C. Cir. Aug. 19, 2003) ...................................................... 6

*Sepúlveda-Villarini v. Dep't of Educ. of P.R.,*
    628 F.3d 25 (1st Cir. 2010) ................................................................................................. 5

*Spradley v. Owens-Illinois Hourly Employees Welfare Benefit Plan,*
    686 F.3d 1135, 1140 (10th Cir. 2012) ................................................................................. 12

*Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.,*
    852 F.3d 105 (1st Cir. 2017) ............................................................................................. 12

*Toman v. Goldman, Sachs & Co. Med. Plan,*
    2004 U.S. Dist. LEXIS 8714 (D. Utah April 8, 2004) ........................................................ 7

*UAW v. Keystone Consol. Indus.,*
    793 F.2d 810 (7th Cir. 1986) ............................................................................................. 18

*Varity Corp. v. Howe,*
    516 U.S. 489, 116 S. Ct. 1065, 134 L.Ed.2d 130 (1996) .............................................. 16, 17

*Vorpahl v. Harvard Pilgrim Insurance Co.,*
    2018 U.S. Dist. LEXIS 121316 (D. Mass. July 20, 2018) ........................................... *passim*

*Wickman v. Northwestern Nat'l Ins. Co.,*
    908 F.2d 1077 (1st Cir. 1990) ............................................................................................. 6

*Wright v. Hartford Life & Accident Ins. Co.,*
    2015 U.S. Dist. LEXIS 96204 (W.D.N.C. July 23, 2015) .................................................. 15

## Regulations

29 U.S.C. § 1132(a)(1)(B) ..................................................................................... *passim*

29 U.S.C. § 1132(a)(3) ........................................................................................... *passim*

29 C.F.R. § 2560.503-1(f)(2000) ................................................................................. 13

29 U.S.C. § 1082(a)(1 ................................................................................................. 18

**Rules**

Fed. R. Civ. Pro. 15................................................................................................... 20

Mental Health Parity and Addictions Act...................................................................... *passim*

# I.    INTRODUCTION

Plaintiffs' children are mentally ill and/or have chemical dependency issues. All three children were treated at wilderness therapy programs, which provide conventional individual, group and family therapy in unconventional settings: the woods, the desert, the mountains. In all three cases, the requests for coverage from their insurer or plan administrator were denied, based on the same plan language.[1]

The **Second Amended Complaint** is premised on two main legal theories: 1) BCBS erroneously denied coverage under the plans' language, and 2) BCBS's coverage position results in a blanket denial for all wilderness therapy programs in violation of the Mental Health Parity and Addictions Act ("Parity Act") because BCBS doesn't apply a similar blanket denial for comparable medical/surgical services.

BCBS's motion[2] seeks dismissal of the "plan enforcement" related ERISA claims, but not of plaintiffs' claim that BCBS violated the Parity Act. As seen below, the rationale supporting BCBS's motion fails at every turn. First, a correct reading of the plans' language, using the applicable rules of construction, shows that plaintiffs' children's wilderness therapy should have been covered. Second, the motion impermissibly raises issues that BCBS didn't raise while the plaintiffs completed the mandatory internal appeals process. The Court should deny BCBS's motion.

# II.    BACKGROUND

A.C., daughter of plaintiff Cotten, has struggled for years with such diagnoses as

---

[1] For purposes of the motion, there is no difference between insurer and plan administrator. Accordingly, in this brief, "BCBS" refers to both defendants.
[2] Docket Entry #88.

major depressive disorder, adjustment disorder, and substance abuse. In May 2016, after other therapies had failed, her psychiatrist and psychotherapist recommended that she seek a more intensive level of care. Plaintiff Cotten, in consultation with his daughter's psychiatrist and psychotherapist, sent A.C. to Evoke at Entrada, a licensed wilderness therapy program. A.C. was treated at Evoke from May 16, 2016 to June 26, 2016. Cotten was charged, and paid, more than $25,000 for this treatment.[3]

At the time these services were rendered, Cotten – and through him A.C. – were covered by an employer-sponsored health insurance plan underwritten by BCBS. Thus, Cotten was an ERISA plan participant, and A.C. was a plan beneficiary.[4]

BCBS denied Cotten's request for coverage on May 27, 2016. Its denial letter stated: "Your plan does not cover the services of this provider whether or not they are medically necessary." Cotten appealed. On June 8, 2016, BCBS affirmed its original decision, stating that "we cannot approve your request because coverage for benefits for a non-covered mental health and substance abuse treatment program, such as wilderness therapy, is specifically excluded in your … Plan, even when it is medically necessary."[5] BCBS included with the denial letter excerpts from Cotten's plan:

> No benefits are provided for psychiatric services for a condition that is not a mental condition; residential or other care that is custodial care; and services and/or programs that are not medically necessary to treat your mental condition. Some examples of services and programs that are not covered by this health plan are: services that are performed in educational, vocational or recreational settings; and 'outward bound-type,' 'wilderness camp,' 'camp,' or 'ranch programs.'[6]

---

[3] **Second Amended Complaint, ¶¶ 17, 22.**
[4] *Id.*, **¶ 8.**
[5] *Id.*, **¶ 26, Ex. D.**
[6] *Id.*, **¶ 27** (italics removed).

J.R., son of plaintiff Robinson, has struggled for years with such mental health issues as suicidal ideation and substance abuse. In February 2017, after in-patient hospitalization and other therapies had failed, and in consultation with J.R.'s therapist, Robinson sent J.R. to Confluence Behavioral Health, a short-term licensed residential treatment center. J.R. was treated at Confluence from February 13, 2017 to April 12, 2017. Robinson was charged, and paid, $26,550, for his son's treatment.[7]

Robinson, and through him J.R., are covered under a self-insured health plan sponsored by his employer, which is administered by BCBS and is regulated by ERISA. Accordingly, Robinson is a "plan participant" and J.R. is a "beneficiary."[8]

On March 14, 2017, BCBS refused to authorize Robinson's request for coverage. The denial letter referred to Confluence as a "Wilderness Program" and quoted the identical exclusion enclosed with Cotten's final denial.[9] Robinson appealed, and on September 26, 2017, BCBS affirmed its denial, citing the same exclusionary language.[10]

C.K., plaintiff Cain's son, has struggled for years with mental health issues and has been diagnosed with anxiety disorder and panic attacks. In February 2017, after treatment by a psychiatrist and psychologist failed, and on their recommendation, Cain sent C.K. for treatment to Summit Achievement of Stow, a licensed residential treatment center. C.K. was treated at Summit from February 27, 2017 to May 9, 2017. Cain was charged, and paid, $37,669 for C.K.'s treatment.[11]

---

[7] *Id.*, ¶¶ 31, 37-38.
[8] *Id.*, ¶ 12.
[9] *Id.*, ¶ 40.
[10] *Id.*, ¶ 42.
[11] *Id.*, ¶¶ 45, 51-52.

Cain, and through her C.K., are covered under a self-insured health plan sponsored by her employer, and thus regulated by ERISA. Under ERISA, Cain is an ERISA "plan participant" and C.K. is a "beneficiary."[12]

On March 1, 2017, BCBS refused to authorize coverage for C.K. The denial letter identified Summit as a "Wilderness Program" and quoted the same exclusion it invoked in denying Cotten's and Robinson's claims. Cain appealed. BCBS affirmed its denials on August 17, 2017 and on November 9, 2017, invoking the same purported exclusion.[13]

Plaintiffs have brought this case as a class action. In the **Second Amended Complaint**, they asserted three claims. Count 1 is for plan enforcement under 29 U.S.C. § 1132(a)(1)(B).[14] This claim alleges that, based on the terms of the plan, and guided by the applicable rules of construction, plaintiffs are entitled to coverage.

Count 2[15] is for violation of the Parity Act, whose terms are incorporated into ERISA.  BCBS did not move to dismiss this count, perhaps because several recent courts have denied motions to dismiss similar Parity Act claims involving wilderness therapy programs.[16]  For example, in a wilderness therapy case pending against Harvard Pilgrim in this District, Judge Casper denied the motion to dismiss, stating: "it appears sufficient to allege, as Plaintiffs have here, 'that a mental-health treatment is categorically excluded while a corresponding medical treatment is not' to state a Parity

---

[12] *Id.,* ¶ **12.**
[13] *Id.,* ¶ **56, Ex. F.**
[14] *Id.,* ¶¶ **133-35.**
[15] *Id.,* ¶¶ **136-39.**
[16] *Vorpahl v. Harvard Pilgrim Insurance Co.,* 2018 U.S. Dist. LEXIS 121316 (D. Mass. July 20, 2018); *A.Z. v. Regence Blue Shield,* 2018 U.S. Dist. LEXIS 134669 (W.D. Wash. August 9, 2018)(citing *Vorpahl*); *Gallagher v. Empire HealthChoice Assurance, Inc.* 2018 U.S. Dist. LEXIS 154756 (S.D.N.Y. Sept. 11, 2018)(citing *Vorpahl*).

Act claim."[17]

Plaintiffs' Count 3, brought under 29 U.S.C. § 1132(a)(3),[18] seeks equitable relief

that is otherwise unavailable through the first two legal counts.

BCBS makes two main arguments. First, it argues that its coverage position is

correct.[19] Second, it argues that plaintiffs' claim under 29 U.S.C. § 1132(a)(3) duplicates

their claims under 29 U.S.C. § 1132(a)(1)(B).[20] As discussed below, BCBS's arguments

can't be squared with controlling law. The motion should be denied.

### III.   LEGAL STANDARD

When considering a motion to dismiss, the Court conducts a two-step inquiry.

First, the Court must determine whether a plaintiff has alleged sufficient facts that

comply with the basic elements of the cause of action.[21] Under the second step, the

Court must determine whether the complaint "states a plausible claim for relief."[22]   The

First Circuit has cautioned against equating plausibility with an analysis of the likely

success, affirming that the plausibility standard assumes "pleaded facts to be true and

read in a plaintiff's favor" "even if seemingly incredible."[23]

### IV.   ARGUMENT

**A.   Plaintiffs have stated *prima facie* claims for plan enforcement under 29 U.S.C. § 1132(a)(1)(B) – *Count 1.***

---

[17] *Vorpahl*, 2018 U.S. Dist. LEXIS 121316, *10 (citing *Bushell v. Unitedhealth Group*, 2018 U.S. Dist. LEXIS 51577 (S.D.N.Y. March 27, 2018)).

[18] *Id.*, ¶¶ 140-48.

[19] Docket Entry #88, p. 17-15.

[20] *Id.*, p. 15-20.

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009).

[22] *Id.* at 679.

[23] *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010)(internal citations omitted).

1.    *Plaintiffs have pled the proper elements.*

29 U.S.C. § 1132(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." Plaintiffs' **Second Amended Complaint** pleads all of these elements and BCBS doesn't suggest otherwise.

2.    *Rules of construction*

Plan benefit claims – like Count 1 - are subject to various rules of construction that uniformly favor plaintiffs.  Thus, in considering the motion, the Court must:

- Reflect the *purpose* of the ERISA statute itself. "ERISA is a remedial statute designed to fashion anodynes that protect the interests of plan participants and beneficiaries."[24] In application, that means that "[c]ourts should not hasten to employ technical rules of pleading and practice to defeat that goal. This remedial purpose "may prove decisive in an otherwise close case."[25]

- Construe all plan ambiguities against BCBS and in favor of coverage.[26]

- Balance BCBS's coverage position against the plaintiffs' "reasonable expectations" of coverage.[27]

- Apply the burden on BCBS for all coverage positions dependent on purported plan exclusion. "ERISA places the burden of proving an

---

[24] *Degnan v. Publicker Indus., Inc.*, 83 F.3d 27, 30 (1st Cir. 1996).
[25] *Risteen v. Youth for Understanding, Inc.*, 2003 U.S. Dist. LEXIS 16726, *11 (D.C. Cir. Aug. 19, 2003).
[26] *Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 268 (1st Cir. 1994)("Similarly, in keeping with the rule of *contra proferentem*, ambiguous terms [in ERISA plans] should be strictly construed against the insurer.")(internal citations omitted).
[27] *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1088 (1st Cir. 1990)("[T]he reasonable expectations of the insured when the policy was purchased is the proper starting point" for interpreting a plan.).

exclusion from coverage in an ERISA-regulated welfare plan on the plan administrator."[28]

### 3.      Standard of review

While there are differing standards for judicial review of plan administrators' decisions under ERISA, they don't apply in the context of a motion to dismiss:  "A Rule 12(b)(6) Motion is designed to challenge the sufficiency of the allegations of the Complaint, not the actual decision made by a plan administrator."[29]

### 4.      BCBS *covers* wilderness therapy.

BCBS, generally, promises to cover "Covered Services," a defined term that limits BCBS's coverage obligations to those (1) "covered services" that are (2) "medically necessary" (3) furnished by "covered providers" and – when required – (4) approved in advance by BCBS.[30] Below is an examination of all four elements.

#### a.      Covered services

BCBS covers "medically necessary services to diagnose and/or treat  mental conditions," including both biologically-based mental conditions and non-biologically-based mental, behavioral or emotional disorders, along with "[a]ll other non-biologically-based mental conditions." BCBS specifically covers "intermediate treatments" for mental health services, which it describes as "medically necessary care

---

[28] *Caffey v. UNUM Life Ins., Co.*, 302 F.3d 576, 580 (6th Cir. 2002). *Accord, Dowdy v. Metropolitan Life. Ins. Co.*, 890 F.3d 802, 810 (9th Cir. 2018)(Under ERISA, exclusionary clauses are given strict construction and should be read narrowly rather than expansively.); *Toman v. Goldman, Sachs & Co. Med. Plan*, 2004 U.S. Dist. LEXIS 8714, *16  (D. Utah April 8, 2004)("Under ERISA, an insurer bears the burden to prove facts supporting an exclusion of coverage. Federal courts treat insurer claims of policy exclusions as affirmative defenses.")(citation omitted).
[29] *Adomaitis v. Alcoa, Inc.*, 2007 U.S. Dist. LEXIS 18574, *5-6 (W.D. Pa. March 15, 2007).
[30] **Second Amended Complaint, Ex. A, ECF p. 20; Ex. B, ECF p. 19; Ex. C, ECF p. 19.**

that is more intensive than typical outpatient care" where 24-hour inpatient care isn't

required. This includes acute residential treatment, partial hospitalization, and intensive

outpatient programs.[31] The plaintiffs' children were all diagnosed with "mental,

behavioral or emotional disorders"[32] and the plaintiffs all sought "medically necessary

care that is more intensive than typical outpatient care" for their care.[33]

### b.   Medical necessity

To qualify for coverage, the service must be "medically necessary."[34] Throughout

the internal appeals process, BCBS did not deny the plaintiffs' claims for lack of medical

necessity[35] and it did not raise the issue here.  In fact, the letter denying Cotten's claim

stated that "[w]e are not questioning the medical necessity of the service" and the letters

denying Robinson's and Cain's claims stated that "[w]e are not making a medical

necessity judgment."[36]

### c.   Covered providers

BCBS covers services rendered at "alcohol and drug treatment facilities; []

detoxification facilities; [] mental health centers; [and] opioid treatment program

providers."[37] None of these terms are defined; they all reasonably describe the services

rendered at plaintiffs' three wilderness therapy programs.[38]

---

[31] *Id.*, **Ex. A, ECF p. 54-55; Ex. B, ECF p. 51-53; Ex. C, ECF p. 51-52.**
[32] *Id.*, **¶¶ 17, 31, and 45.**
[33] *Id.*, **¶¶ 1-2, 17-21, 31-36, 45-50.**
[34] *Id.*, **Ex. A, ECF p. 26; Ex. B, ECF p. 23; Ex. C, ECF p. 23.**
[35] **Second Amended Complaint, Exs. D-G.**
[36] *Id.*, **Ex. D, E, and F.**
[37] *Id.*, **Ex. A, ECF p. 26; Ex. B, ECF p. 24; Ex. C, ECF p. 24.**
[38] *Id.*, **¶¶ 1-2; 17-21; 31-36; and 45-50.**

### d.        Pre-approval

As will be discussed further below, BCBS states that "[t]here are certain health care services or supplies that must be approved for you …"[39] BCBS's plan language does <u>not</u>, however, inform the insured to what services that applies.

Using the rules of construction that plan language should be construed against BCBS in favor of coverage and based on the reasonable expectation of plan members, the plaintiffs could reasonably have expected that their children's mental health diagnoses necessitating treatment were covered, and that the wilderness therapy programs where they sent their children for treatment – which were licensed to provide mental health and substance abuse treatments - were covered intermediate services. Plaintiffs satisfy BCBS's coverage conditions and present a *prima facie* claim for benefits.

### 5.        *There is no applicable exclusion for wilderness therapy.*

BCBS's leadoff argument restates the <u>only</u> basis it invoked throughout the appeals process in denying the  plaintiffs' claims: "[T]he services provided at Evoke, Confluence and Summit fall squarely within the Recreational Exclusion."[40] BCBS calls it the "Recreational Exclusion,"[41] but this is misleading. In fact, this "exclusion" is a limitation on what is otherwise a coverage grant. Here's the entire paragraph on which BCBS relies:

> No benefits are provided for: psychiatric services for a condition that is not a mental condition; residential or other care that is custodial care; and services and/or programs that are not medically necessary to treat your mental condition. Some examples of services and programs that are not covered by this health plan are: services that are performed in

---

[39] *Id.,* **Ex. A, ECF p. 33; Ex. B, ECF p. 30 ; Ex. C, ECF p. 31.**
[40] Docket Entry #88, p. 8.
[41] *Id.*

educational, vocational, or recreational settings; and "outward bound-type," "wilderness," "camp," or "ranch" programs. These types of non-covered programs may be in residential or nonresidential settings. They may include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities. These programs may have educational accreditation. The staff may include some licensed mental health providers who may provide some therapy. No benefits are provided for any services furnished along with one of these non-covered programs. For example, no benefits are provided for therapy and/or psychotherapy furnished along with one of these non-covered programs.[42]

Two things are apparent from this language:

1) The limitation is directed (in its first sentence) at three issues: lack of medical necessity; custodial care; and psychiatric services used to treat conditions that BCBS doesn't consider "mental conditions." *Only one of these issues – "residential or other care that is custodial care"- was raised by BCBS during the plaintiffs' appeals process.*

2) The six sentences that follow the opening all provide examples of services that are excluded by the first sentence, which apparently give examples of the types of service considered custodial care.

While BCBS calls this its "Recreational Exclusion,"[43] the coverage issue it has raised focuses on the meaning of "custodial care." If the wilderness therapy programs can be appropriately categorized as "custodial care," then the limitation might apply. If, however, the wilderness therapy programs don't qualify as "custodial care," then the limitation doesn't apply.

Here is how BCBS defines custodial care:

Care that is given primarily by medically-trained personnel for a member who shows no significant improvement response despite extended or repeated treatment; or [c]are that is given for a condition that is not likely to improve, even if the member receives attention of medically-trained personnel; or [c]are that is given for the maintenance and monitoring of an established treatment program, when no other aspects of treatment require an acute level of care; or [c]are that is given for the purpose of meeting personal needs which could

---

[42] **Second Amended Complaint, Ex. A, p. 45; Ex. B, p. 41; Ex. C, p. 41.**
[43] *E.g.,* Docket Entry #88, p. 8.

be provided by persons without medical training, such as assistance with mobility, dressing, bathing, eating and preparation of special diets, and taking medications.[44]

This definition describes a sort of medical monitoring situation, where an insured patient is not progressing but nevertheless requires some sort of medical intervention.[45] BCBS's definition of "custodial care" comes nowhere close to describing the services provided by plaintiffs' wilderness therapy providers, which "provide traditional evidence-based mental health and substance abuse treatments … in a wilderness setting."[46] These programs use "a multidisciplinary approach to treat youth with mental health and substance abuse diagnoses"[47] that includes psychiatric assessments, individual, group, and family therapy.[48] Services were rendered by, among others, psychologists[49] and Ph.D. level and masters' level[50] therapists.[51]

Thus, the treatment provided to plaintiffs' children could not properly be classified as "recreational" or as providing "custodial care." Construing the complaint's allegations in favor of the plaintiffs, and the plans' language against BCBS and in favor

---

[44] **Second Amended Complaint, Ex. A, ECF p. 21; Ex. B, ECF p. 19; Ex. C, ECF p. 20.**

[45] *Camelot Care Centers v. Planters Lifesavers Co.*, 836 F. Supp. 545, 549-5 (N.D. Ill. 1993)(citing 32 C.F.R. § 199.2(b)(1992) [regulations promulgated to define terms in Dependents' Medical Care Act]). *See also Hayner v. Weinberger*, 382 F. Supp. 762, 766 (E.D.N.Y. 1974)(custodial care is "a level of routine maintenance or supportive care which need not be provided in an institutional setting by skilled professional personnel."); *O'Connor v. Central Virginia U.F.C.W.*, 945 F.2d 799, 802 (4th Cir. 1991)(court accepted following as definition of custodial care: "Services focusing on supporting the patient in activities of daily living observation, supervision and evaluation for regression and complications."); *Erickson v. Aetna Life Ins. Co.*, 777 F. Supp. 1463, 1467 (D. Minn. 1991) (accepting definition of custodial care as "care that is provided primarily to assist the individual in the activities of daily living…. Those activities include eating, dressing, grooming, voiding, and moving the extremities to maintain muscle condition.").

[46] **Second Amended Complaint, ¶ 2.**

[47] *Id.*, **¶¶ 19, 34, 48.**

[48] *Id.*, **¶¶ 20, 36, 50.**

[49] *Id.*, **¶¶ 21, 33.**

[50] *Id.*, **¶¶ 47.**

[51] *Id.*, **¶¶ 21, 33.**

of coverage, BCBS's so-called Recreational Exclusion doesn't apply.

### 6.     *BCBS waived its other coverage defenses.*

BCBS raised three arguments in its motion that it did not raise in its

adjudication of the plaintiffs' claims. Accordingly, those arguments are waived.

The First Circuit made that crystal clear in a case against BCBS: "A plan

administrator, in terminating or denying benefits, may not rely on a theory for its

termination or denial that it did not communicate to the insured prior to

litigation."**52** *See also, Vorpahl v. Harvard Pilgrim*:

> According to the facts as pled in the complaint, however, Harvard Pilgrim did not raise this point at any point prior to litigation with the Plaintiffs who appealed the denial decision. And 'a plan administrator, in terminating or denying benefits, may not rely on a theory for its termination or denial that it did not communicate to the insured prior to litigation.' *Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 852 F.3d 105, 113 (1st Cir. 2017).**53**

The reasons supporting this rule are embedded within the ERISA statute and its

interpretive regulations. 29 U.S.C. § 1133 provides that "every employee benefit plan

shall … provide adequate notice in writing to any participant or beneficiary whose

---

**52** *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 113 (1st Cir. 2017)(citing *Glista v. UNUM Life Ins. Co.*, 378 F.3d 113, 128-32 (1st Cir. 2004) and *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 244 (1st Cir. 2006). *Accord, Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719-20 (9th Cir. 2012)("A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding"); *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 353 (5th Cir. 2015)("Nevertheless, we hold that we are limited to considering whether the record supports the reasons that RSL provided to George *during the claims proceeding.*")(emphasis in original); *Spradley v. Owens-Illinois Hourly Employees Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012)("However, when reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious.").
**53** *Vorpahl*, 2018 U.S. Dist. LEXIS 121316, *13.

claim for benefits under the plan has been denied, setting forth the <u>specific reasons</u> for such denial." (emphasis added) The Department of Labor's implementing regulations require that the initial notice of claim contain:

- The specific reason for the denial;
- Specific reference to pertinent plan provisions on which the denial is based;
- A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
- Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.[54]

These regulations further the overall purpose of the internal review process, which is to minimize the number of frivolous lawsuits; promote consistent treatment of claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement.[55] Those goals:

> are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary. Such conduct prevents ERISA plan administrators and beneficiaries from having a full and meaningful dialogue regarding the denial of benefits.[56]

The Court should not permit BCBS to advance positions here that it did not take during plaintiffs' administrative review.

BCBS's position is not helped if the Court nevertheless considers the arguments it first raised here. The first of these is that the wilderness therapy programs that treated plaintiffs' children were not licensed mental health providers.  Plaintiffs alleged, however, that all of these programs were licensed to provide the mental health services

---

[54] 29 C.F.R. § 2560.503-1(f)(2000).
[55] *Powell v. AT&T Comm., Inc.*, 938 F.2d 823, 826 (7th Cir. 1991).
[56] *Glista*, 378 F.3d at 129.

their children received and that these services were delivered by licensed mental health professionals, including psychiatrists, psychologists, and masters level therapists.[57]

The second argument that BCBS raised for the first time in its motion is that wilderness therapy programs are not covered mental health providers under the plan language.[58] The primary failing of this argument is that BCBS limited its argument regarding covered mental health providers to the plan language defining "mental health acute residential treatment facilit[ies]."[59]  Mental health providers are, however, defined elsewhere in the plan documents and include alcohol and drug treatment facilities; detoxification facilities; mental health centers; and opioid treatment program providers.[60] The wilderness therapy programs where plaintiffs' children were treated qualify under all of those descriptions.[61]

BCBS's third argument raised for the first time in its motion is that "pre-authorization"[62] was required.  This argument is equally meritless. Aside from the fatal defect that it wasn't raised during any of the plaintiffs' appeals, the plan itself doesn't expressly require pre-authorization for mental health treatment; instead, it states "[t]here are certain health care services or supplies that must be approved for you"[63] without specifying which ones. BCBS cannot refuse to cover services for lack of pre-

---

[57] **Second Amended Complaint, ¶ 95.**
[58] Docket Entry #88, p. 8-14.
[59] Docket Entry #88, p. 10.
[60] **Second Amended Complaint, Ex. A, ECF p. 26; Ex. B, ECF p. 24; Ex. C, ECF p. 24.**
[61] *Id.,* **¶¶ 18-21, 32-36, and 46-50.**
[62] Docket Entry #88, p. 14-15.
[63] *Id.,* **Ex. A, ECF p. 33; Ex. B, ECF p. 30 ; Ex. C, ECF p. 31.**

authorization where it did not inform subscribers what services required pre-authorization.

This Court should reject all three of the arguments that BCBS raised for the first time in this motion.

**B.    Plaintiffs have stated a *prima facie* claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) – *Count 2.***

*1.    Plaintiffs have pled the proper elements.*

Plaintiffs' Count 3 is brought under 29 U.S.C. § 1132(a)(3).[64] Under ERISA, a claim may be brought "to enjoin any act or practice which violates any provision of this subchapter … [or] to enforce any provisions of this subchapter."[65] "To state a claim for breach of fiduciary duty under § [1132](a)(3), the Plaintiff must establish that: (1) the Defendant was a fiduciary of the ERISA plan; (2) the Defendant breached its fiduciary responsibilities under the plan; and (3) injunctive or other equitable relief is necessary to remedy the breach."[66] BCBS doesn't challenge plaintiffs' satisfaction of these elements. Instead, it argues, first, that the (a)(3) claim must be dismissed because adequate relief is available through plaintiffs' (a)(1)(B) claim.[67] Second, BCBS argues that the claim fails because it is characterized as plan design, which – BCBS argues - is not a fiduciary act.[68] Finally, it argues that it didn't fail to follow plan terms[69] (a claim entirely predicated on BCBS's 1132(a)(1)(B) arguments.)

---

[64] **Second Amended Complaint, ¶¶ 140-48.**

[65] 29 U.S.C. § 1132(a)(3).

[66] *Wright v. Hartford Life & Accident Ins. Co.*, 2015 U.S. Dist. LEXIS 96204, *19 (W.D.N.C. July 23, 2015).

[67] Docket Entry #88, p. 15-17.

[68] *Id.*, p. 17-18.

[69] *Id.*, p. 19-20.

2.      *Section 1132(a)(3) claims may be pled in the alternative.*

BCBS's first argument – that plaintiffs' (a)(3) claim fails because they have an

(a)(1)(B) claim - springs from the distillation of two Supreme Court cases, *Varity Corp. v.*

*Howe*[70] and *CIGNA Corp. v. Amara*.[71]  In *Varity*, the U.S. Supreme Court allowed a group

of plaintiffs, who were unable to bring a claim under § 1132(a)(1)(B), to bring suit for

breach of fiduciary duty under § 1132(a)(3). According to the Court, § 1132(a)(3)

"functions as a safety net, offering appropriate equitable relief for injuries caused by

violations that § [1132] does not elsewhere adequately remedy."[72]  The Court qualified

this holding, noting that "where Congress elsewhere provided adequate relief for a

beneficiary's injury, there will likely be *no need* (emphasis added) for further equitable

relief, in which case such relief normally would not be appropriate."[73]

That's the holding on which BCBS's argument is premised. It is not, however, the

Supreme Court's last word on this topic. In *CIGNA Corp. v. Amara*,[74] the Supreme Court

held that § 1132(a)(3) authorized equitable relief in the form of plan reformation, even

though plaintiffs also claimed relief under § 1132(a)(1)(B). In *Amara*, employees filed a

class action suit against their employer after the employer significantly changed the

terms of their pension plan. The employees alleged that their employer did not provide

adequate notice of the new plan as required by ERISA. The Court found that although

the employer did violate its disclosure obligations, § 1132(a)(1)(B) could not authorize

---

[70] 516 U.S. 489 (1996).
[71] 516 U.S. 489 (2011).
[72] *Id.* at 513.
[73] *Id.* at 515 (internal quote marks omitted).
[74] 563 U.S. 421 (2011).

relief for the employees in the form of plan reformation.[75] The *Amara* court held that

§ 1132(a)(1)(B) could only authorize the enforcement of the terms of the plan, it could

not change the terms of the plan.[76] The Court, nonetheless, held that plan reformation

was available under § 1132(a)(3) as an equitable remedy, stating that the power to

reform contracts is a traditional power of an equity court.[77] Therefore, once the plan was

reformed under § 1132(a)(3) to reflect the terms of the old plan, it could be enforced

under § 1132(a)(1)(B). After the *Amara* court held that plaintiffs did not have

reformation available to them under § 1132(a)(1)(B), the Supreme Court went on to

authorize reformation as a form of equitable relief under § 1132(a)(3)."[78]

In *Moyle v. Liberty Mut. Ret. Benefit Plan*,[79] the Ninth Circuit confronted head-on

the question raised by BCBS, and found that *Varity* and *Amara*, together, affirmed

pleading both § 1132(a)(1)(B) and § 1132(a)(3) as <u>alternative</u> claims.

> We agree with the Eighth Circuit's application of Amara in *Silva v. Metro. Life Ins. Co.*, 762
> F.3d 711 (8th Cir. 2014). There, the Eighth Circuit held that a plaintiff may seek relief under
> § 1132(a)(1)(B) and § 1132(a)(3), stating that '[the *Amara* court] addressed the issue in
> terms of available relief and did not say that plaintiffs would be barred from initially bringing
> a claim under the § 1132(a)(3) catchall provision simply because they had already
> brought a claim under the more specific portion of the statute, § 1132(a)(1)(B).' 762 F.3d at
> 727. The Eighth Circuit addressed prior cases that prohibited plaintiffs from seeking relief
> under both provisions and explained, 'We do not read *Varity* . . . to stand for the
> proposition that [a plaintiff] may only plead one cause of action to seek recovery [for an
> ERISA violation]. Rather, we conclude those cases prohibit duplicate *recoveries* when a
> more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to
> what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3). *Silva*, 762 F.3d
> at 726… The Eighth Circuit's reading permits plaintiffs to present § 1132(a)(1)(B) and §
> 1132(a)(3) as alternative—rather than duplicative—theories of liability. This approach is an
> accurate application of *Amara* in light of *Varity* because it allows plaintiffs to plead alternate

---

[75] *Id.* at 438.

[76] *Id.*

[77] *Id.* at 440-42.

[78] *Id.* at 438

[79] 2016 U.S. App. LEXIS 15202 (9th Cir. Aug. 18, 2016).

theories of relief without obtaining double recoveries.

*Amara* controls here. Among other things, plaintiffs seek to reform, under § 1132(a)(3), BCBS's contracts so that they comply with the requirements of the Parity Act. Such relief is distinct from what is available under § 1132(a)(1)(B).

### 3.    *Violation of the ERISA statute is not protected "plan design."*

BCBS also argues that it cannot be held liable for violating ERISA's statutory protections because it was not a fiduciary when it designed its plan. This argument ignores the fact that plaintiffs' §1132(a)(3) claim seeks to enjoin BSBS's violation of the Parity Act, the terms of which "are incorporated into ERISA and may be enforced using the civil enforcement provisions in ERISA § [1132]."[80] Thus, it is a violation of ERISA – more specifically the Parity Act – that is at issue here rather than plan design.

In an analogous situation, the First Circuit has summarized:

Whatever a private contract may provide, ERISA continues to govern employers' funding obligation with respect to covered pension plans. See *Advanced Lightweight Concrete*, 484 U.S. at 546-47. The statutory mandates operate in tandem with contractually imposed duties. See *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999); *Keystone Consol. Indus.*, 793 F.2d at 813. When a plan fails to meet the statutorily imposed minimum funding requirement for a given plan year, the employer must satisfy that requirement by making further payments, regardless of the terms of the CBA. See 29 U.S.C. § 1082(a)(1). The statutory obligation is independent of whatever arrangements private agreements may contemplate. See *Hughes Aircraft*, 525 U.S. at 442; cf. *Esden v. Bank of Bos.*, 229 F.3d 154, 173 (2nd Cir. 2000) (stating that "[t]he Plan cannot contract around [ERISA]").[81]

---

[80] *American Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp.3d 157, 161 (D. Conn. 2014), *cert. denied*.

[81] *Gastronomical Workers Union Local 610 v. Dorado Beach Hotel Corp.*, 617 F.3d 54, 62 (1st Cir. 2010).

Strangely, BCBS doesn't bother mentioning *Laurenzano v. Blue Cross & Blue Shield*,[82] which involved its own ERISA retirement plan. At issue was the plan design concerning accrued benefits. The trial court ruled for plaintiffs on their § 1132(a)(3) claim, rejecting BCBS's claim that it was free to define accrued benefit as it saw fit – an argument that mimics the one here. "The problem with [BCBS's] argument is that it would permit the terminology found in a retirement plan to defeat the intent of Congress. [BCBS] has leeway to define the benefits that it will provide participants, but it does not have leeway to change the legal meaning of 'accrued benefit.'"[83] The two cases[84] cited by BCBS do not involve a violation of ERISA,[85] and are inapposite.

### 4.   BCBS's "plan terms" argument misses the point.

BCBS also argues that the 1132(a)(3) claim is lost because it adhered to its plan language in denying plaintiffs' wilderness therapy claims.[86] The problem: the claim is directed at BCBS's violation of the Parity Act, whose terms are incorporated as a matter of law into plaintiffs' plans.[87] By violating the Parity Act, BCBS has breached its plan language. BCBS, however, did not move to dismiss the Parity Act claim (Count 2).

---

[82] 134 F. Supp.2d 189 (D. Mass. 2001).
[83] *Id.* at 199.
[84] Docket Entry #88, p. 18.
[85] *American Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp.3d 157, 169 (D. Conn. 2014), *aff'd*, 821 F.3d 352 (2nd Cir. 2016)(in a case where court concluded that plaintiff had no standing, it also found that plaintiffs challenge was to defendants' setting of reimbursement rates and policies regarding the extent of coverage, "which are business decisions."); *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F Supp.2d 198, 210 (D. Mass. 2002), *aff'd,* 316 F.3d 290 (1st Cir. 2003)(no requirement that participants receive the benefit of the insurer's negotiated discounts).
[86] Docket Entry #88, p. 20.
[87] **Second Amended Complaint, ¶¶ 144-46.**

## V.   CONCLUSION

BCBS's arguments fail across the board. The Court should reject them and require BCBS to answer the **Second Amended Complaint** on its merits. [88]

Dated:  November 19, 2018

By: */s/ Patrick J. Sheehan*
Patrick J. Sheehan (BBO #639320)
**Whatley Kallas, LLP**
60 State Street, 7th Floor
Boston, Massachusetts 02109
Tel.: (617) 573-5118
Fax: (617) 371-2950
Email: psheehan@whatleykallas.com

Deborah J. Winegard (admitted pro hac vice)
Georgia Bar No.: 770440
**Whatley Kallas, LLP**
1068 Virginia Avenue, NE
Atlanta, GA 30306
Tel: (404) 607-8222
Fax: (800) 922-4851
Email: dwinegard@whatleykallas.com

Jordan M. Lewis (admitted pro hac vice)
Florida Bar No.: 97997
**Jordan Lewis, P.A.**
4473 N.E. 11th Avenue
Fort Lauderdale, Florida 33334
Tel.:    (954) 616-8995
Fax:    (954) 206-0374
Email: jordan@jml-lawfirm.com

***Attorneys for Plaintiffs***

---

[88] If the Court is inclined to grant the motion, plaintiffs should be granted leave to amend the complaint under Fed. R. Civ. Pro. 15 that provides that courts "should freely give leave [to amend] when justice so requires."

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished

by CM/ECF notification this 19th day of November, 2018 to:

| | |
|---|---|
| Charles L. Solomont (BBO# 557190)<br>Alexandra S. Tuffor (BBO# 692864)<br>**Morgan, Lewis & Bockius LLP**<br>One Federal Street<br>Boston, Massachusetts 02110<br>Tel.: (617) 341-7700<br>Fax: (617) 341-7701<br>carl.solomont@morganlewis.com<br>Alexandra.tuffor@morganlewis.com<br><br>*Attorneys for Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc., and Blue Cross and Blue Shield of Massachusetts, Inc.* | Joseph J. Costello (admitted *pro hac vice*)<br>**Morgan, Lewis & Bockius, LLP**<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>Tel.: (215) 963-5000<br>Fax: (215) 963-5001<br>Joseph.costello@morganlewis.com<br><br><br>*Attorneys for Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc., and Blue Cross and Blue Shield of Massachusetts, Inc.* |
| Molly Moriarty Lane (admitted *pro hac vice*)<br>**Morgan, Lewis & Bockius LLP**<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1126<br>Tel.: (415) 442-1000<br>Fax: (415) 442-1001<br>Molly.moriarty@morganlewis.com<br><br>*Attorneys for Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc., and Blue Cross and Blue Shield of Massachusetts, Inc.* | Lisa Veasman (admitted *pro hac vice*)<br>**Morgan Lewis & Bockius LLP**<br>300 South Grand Avenue, 22nd Floor<br>Los Angeles, CA 90071-3132<br>Tel.: (213) 612-2500<br>Fax: (213) 612-2501<br>Lisa.veasman@morganlewis.com<br><br>*Attorneys for Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc., and Blue Cross and Blue Shield of Massachusetts, Inc.* |

*/s/ Patrick J. Sheehan*
Patrick J. Sheehan

21