UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-12176-RGS

DAVID COTTEN, JAMES ROBINSON, and CAROLYN CAIN,
individually and on behalf of himself and all others similarly situated

v.

BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE,
INC. and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

December 6, 2018

STEARNS, D.J.

David Cotten, James Robinson, and Carolyn Cain are plaintiffs in this putative class action brought against Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. and Blue Cross and Blue Shield of Massachusetts, Inc. (collectively BCBS). Plaintiffs allege that BCBS improperly denied claims for the costs of treating their children's mental health issues in wilderness therapy programs. The Second Amended Complaint sets out three claims: plan enforcement under the Employee Retirement Income Security Act of 1974 (ERISA) (Count I), breach of protections under the Mental Health Parity and Addiction Equity Act (Count II), and breach of fiduciary duty under ERISA and the Parity Act (Count III).

BCBS moves to dismiss Counts I and III. For the reasons to be explained, BCBS's motion to dismiss Counts I and III will be allowed.

## BACKGROUND

The facts, viewed in the light most favorable to plaintiffs as the nonmoving party, are as follows. BCBS administered employment-sponsored health insurance plans for plaintiffs and their three children. The children have mental health and substance abuse issues. On the advice of mental health professionals, plaintiffs enrolled their children in wilderness therapy programs.[1] They sought but were denied coverage from BCBS. The appeal of the denial was ultimately disallowed. BCBS explained that:

> No benefits are provided for psychiatric services for a condition that is not a *mental condition*; residential or other care that is *custodial care*; and services and/or programs that are not *medically necessary* to treat your *mental condition*. Some examples of services and programs that are not covered by this health plan are: services that are performed in educational, vocational, or recreational settings; and "outward bound-type," "wilderness," "camp," or "ranch" programs.

SAC ¶¶ 27, 40, 54. BCBS did not, however, question the medical necessity of the treatment or the children's mental conditions.

---

[1] Cotten's daughter enrolled at Evoke at Entrada in Utah, Second Am. Compl. (SAC) ¶ 17, Robinson's son at Confluence Behavioral Health in Vermont, *Id.* ¶ 31, and Cain's son at Summit Achievement of Stow in Maine. *Id.* ¶ 45.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

### *Count I*

ERISA provides a private right of action for a participant "to recover benefits due under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs argue that their children's

3

wilderness therapy is covered under "a correct reading of the plans' language, using the applicable rules of construction." Opp'n (Dkt # 96) at 1. They also argue that the court must "[c]onstrue all plan ambiguities against BCBS and in favor of coverage." *Id.* at 6; *see Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 268 (1st Cir. 1994) ("[I]n keeping with the rule of *contra proferentem*, ambiguous terms should be strictly construed against the insurer.").

While the plaintiffs' recitation of the rules of construction is sound, their reading of the plans is not. The exclusionary language cited by BCBS is unambiguous: it specifically disclaims coverage for "residential or other care that is *custodial care*," including "services that are performed in educational, vocational, or recreational settings; and 'outward bound-type,' 'wilderness,' 'camp,' or 'ranch' programs." SAC ¶¶ 27, 40, 54.[2] Plaintiffs contend, however, that the wilderness therapy programs do not amount to "custodial care" in the sense that "custodial" implies a confined, prison-like setting

---

[2] To justify denial, BCBS did not assert that the wilderness therapy programs were "not medically necessary" or that they were treating "a condition that is not a mental condition." SAC ¶¶ 27, 40, 54. *See Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 113 (1st Cir. 2017) ("[A] plan administrator, in terminating or denying benefits, may not rely on a theory for its termination or denial that it did not communicate to the insured prior to litigation.").

where a "patient is not progressing but nevertheless requires some sort of medical intervention." Opp'n (DKt # 96) at 11. "Custodial care," however, has a broader dictionary meaning of "relating to, providing, or being protective care or services for basic needs." *Merriam Webster*, https://www.merriam-webster.com/dictionary/custodial. As the plans make clear, this broader meaning is the one intended. The plans define "custodial care" as, among other things, "[c]are that is given primarily by medically-trained personnel for a *member* who shows no significant improvement response despite extended or repeated treatment." SAC, Exs. A at 11, B at 9, C at 10. This describes the three children's regimens: they were each treated in a wilderness program by mental health professionals after other therapies failed. SAC ¶¶ 17, 20-21, 31, 33, 45, 47. BCBS's denial of coverage under the plans was therefore proper. *See Vorpahl v. Harvard Pilgrim Health Ins. Co.*, 2018 WL 3518511, at *2 (D. Mass. 2018) ("The text of the exclusion does unambiguously apply to the services provided by [the Outdoor Youth Treatment program] Red Cliff."); *Roy C. v. Aetna Life Ins. Co.*, 2018 WL 4511972, at *2 (D. Utah 2018) ("[T]he Plan at issue in this case expressly and clearly excludes from coverage '[t]reatment in wilderness programs or similar programs' . . ., and therefore, Plaintiffs' claim for

benefits for treatment at Open Sky Wilderness Therapy is expressly and clearly excluded from coverage.").

## *Count III*

ERISA authorizes a plan participant to bring an action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiffs allege that BCBS breached its fiduciary duty under ERISA and the Parity Act "by failing to act in accordance with the documents and instruments governing plaintiffs' health benefit plans." SAC ¶ 146. BCBS asserts that this claim fails as a matter of law on three grounds.

First, BCBS argues that the section 1132(a)(3) claim is duplicative because adequate relief is available under section 1132(a)(1)(B) (Counts I and II). BCBS relies on *Varity Corp. v. Howe,* in which the Supreme Court ruled that section 1132(a)(3) is "a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] *does not elsewhere adequately remedy.*" 516 U.S. 489, 512 (1996) (emphasis added); *see also id.* at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case

such relief normally would not be 'appropriate.'"). In the wake of *Varity*, the First Circuit has noted that "federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)." *LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002); *see also Shaffer v. Foster-Miller, Inc.*, 650 F. Supp. 2d 124, 127 (D. Mass. 2009) ("[T]he First Circuit has consistently held that the availability of adequate relief under section 1132(a)(1)(B) to recover benefits due under the terms of a plan bars a separate claim for breach of fiduciary duty under section 1132(a)(3) as a matter of law."); *Kourinos v. Interstate Brands Corp.*, 324 F. Supp. 2d 105, 107 (D. Me. 2004) ("First Circuit caselaw is clear that equitable relief under section 1132(a)(3) is inappropriate when a party is entitled to pursue plan benefits or enforce plan rights under section 1132(a)(1)(B)."); *Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir. 1997) (holding that a beneficiary who was denied benefits could not sue under section 1132(a)(3) because he sought "damages, not equitable relief, and his grievance . . . is specifically addressed by 29 U.S.C. § 1132(a)(1)(B)."). BCBS maintains that Count III should be dismissed because it "simply reiterates and relabels the claims for benefits set forth" in Counts I and II. Mot. to Dismiss (Dkt # 88) at 17.

Plaintiffs counter with a more recent Supreme Court decision, *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). In *Amara*, the Court held that while section 1132(a)(1)(B) does not permit a court to alter the terms of an ERISA plan, section 1132(a)(3) authorizes equitable relief when appropriate. *Id.* at 425. The Eighth and Ninth Circuits read *Amara* as implicitly allowing double-barreled relief. *See Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 546-547 (8th Cir. 2017) ("*Amara* implicitly determined that seeking relief under (a)(1)(B) does not preclude seeking relief under (a)(3)."); *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) ("While *Amara* did not explicitly state that litigants may seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief, *Amara*'s holding in effect does precisely that.").

Plaintiffs contend that their section 1132(a)(3) claim can similarly be pled in the alternative. I disagree. While the First Circuit has yet to address the issue, I am reasonably confident that it would adhere to its prior position as set out in *LaRocca*.[3]

---

[3] Having so concluded, the court need not address BCBS's two remaining arguments that: (1) it did not act as a fiduciary because setting the plans' terms is not a fiduciary act; and (2) even if it was a fiduciary, it would not have breached its duty because it denied plaintiffs coverage according to the plans' terms.

**ORDER**

For the foregoing reasons, BCBS's motion to dismiss Counts I and III is <u>ALLOWED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns    </u>
UNITED STATES DISTRICT JUDGE